COMMONWEALTH *vs.* WILLIAM B. FOSTER.

Plymouth.    October 21, 1902. — November 25, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Intoxicating Liquors.    Witness*, Cross-examination.

The evidence stated by the court was held to be sufficient to warrant the inference that the defendant, a druggist with no license to sell intoxicating liquor, kept such liquor with the intent to sell it unlawfully and to justify the presiding judge in refusing to instruct the jury that the defendant should be acquitted of that offence.

On the trial of a complaint against a druggist with no license to sell intoxicating liquor, for keeping such liquor with intent to sell it unlawfully, where it ap-

peared that certain casks of whiskey were found upon the premises, it was held to be right to instruct the jury upon the question of intent, that they might consider the amount of liquor found and all the circumstances under which it was found and if they came to the conclusion beyond a reasonable doubt that the liquor was kept with intent to sell it as a beverage they should return a verdict of guilty, otherwise, a verdict of not guilty.

On the trial of a complaint against a druggist with no license to sell intoxicating liquor, for keeping such liquor with intent to sell it unlawfully, where it appeared that certain casks of whiskey were found on the premises under circumstances tending to show an intent to sell it unlawfully, it was held that it would have been error to instruct the jury that " there is no inference of guilt to be drawn from the mere finding of intoxicating liquor in an unlicensed druggist's store " and that " the presumption of law, on the contrary, is that such keeping is a legal keeping."

On the trial of a complaint for keeping intoxicating liquor with the intent to sell it unlawfully, a government witness who testified to watching the defendant's store, and seeing men go in and out and clerks repeatedly come to the door and look up and down the street, on cross-examination declined to answer a question as to where he was hiding while watching the store. The judge refused to compel him to answer the specific question, but permitted questions as to how far away the witness was, whether on a level with the street and whether in a building or outdoors, and the witness answered that he was four or five hundred feet away on the second floor of a building looking through a closed window. *Held*, that the refusal to compel the defendant to disclose his hiding place was matter of discretion as to the regulation and restriction of the cross-examination, and moreover, as the defendant was permitted to follow up the subject by inquiring as to direction and distance, it did not appear that he had not pursued the examination as far as he desired, and if he still intended to insist on his alleged right to put the question as to the exact hiding place he should have renewed his objection to the exclusion of that question.

COMPLAINT, received and sworn to September 17, 1900, in the Police Court of the City of Brockton.

On appeal to the Superior Court the case was tried before *Fox*, J. The defendant was found guilty ; and thereafter alleged exceptions.

The case was submitted on briefs at the sitting of the court in October, 1902, and afterwards was submitted on briefs to all the justices.

*F. M. Bixby*, for the defendant.

*G. A. Sanderson*, District Attorney, for the Commonwealth.

MORTON, J. This is a complaint for keeping for sale intoxicating liquors, with intent to sell them unlawfully, in Brockton on the fifteenth day of September, 1900. There was a verdict of guilty and the case is here on the defendant's exceptions.

We think that the verdict was well warranted, and that the instructions that were requested were rightly refused, and that

those that were given were correct.   There was testimony tending to show that the defendant was a druggist and had no license to sell intoxicating liquor ; that on the day named in the complaint he was found in his back shop drawing whiskey from a five gallon cask into dark colored glass jars, and that there was in the room another cask full of whiskey containing four or five gallons ; that no prescriptions were found calling for intoxicating liquors of any kind ; and that during the morning quite a number of men were seen to go into the store, stay a minute or so and go out again, — the hip pocket of one of them protruding as if there was something in it.   There was also testimony from which the jury could have found that the casks were shipped to the defendant packed in sawdust in sugar barrels with the American Sugar Company's brand on the head; that the barrels were addressed F. B. W. & Co., being the defendant's initials reversed ; and that as soon as the barrels reached his store this address was planed off.   These facts unexplained would warrant the inference that the defendant kept intoxicating liquor with the intent to sell the same unlawfully, and justified the judge in refusing to instruct the jury that the defendant should be acquitted.

The judge gave " proper instructions as to the burden of proof, the circumstances and purposes under and for which an unlicensed druggist may properly keep intoxicating liquor " and left it to the jury " to determine upon all the testimony whether the liquors alleged to have been kept by the defendant on the date named . . . were so kept with the intent to illegally sell the same." " Upon the specific question of intent " the judge in substance instructed the jury " that they might consider the amount of liquor found, and all the circumstances under which it was found, and that if they came to the conclusion, beyond a reasonable doubt, that it was kept with intent to sell the same as a beverage they should return a verdict of guilty ; if not, a verdict of not guilty." These instructions were correct. Under the circumstances of the case it would have been error to instruct the jury as requested by the defendant that " There is no inference of guilt to be drawn from the mere finding of intoxicating liquor in an unlicensed druggist's store," and that " The presumption of law, on the contrary, is that such keeping is a legal keep-

ing," and that " the jury must be satisfied beyond a reasonable doubt by other evidence than that of the mere finding of the liquor in the defendant's store, that it was brought there to be kept for sale as a beverage."

A government witness who watched the defendant's store and testified to seeing men go in and out and to seeing the clerks come repeatedly to the door and look up and down the street was asked on cross-examination where he was while he was watching the store. The witness declined to answer on the ground that he did not wish to reveal his hiding place. The judge sustained his objection, and the defendant excepted. The judge thereupon permitted the defendant to inquire of the witness as to the distance and direction and the defendant's counsel asked the witness how far away he was, whether he was on a level with the street, and whether he was in a building or outdoors. The witness answered that he was four or five hundred feet away on the second floor of a building looking through a closed window. The defendant contends that for the purposes of testing the credibility of the witness and of contradicting him if possible, he should have been allowed to ask the witness where he was hiding. The object of a cross-examination is to test the memory, accuracy, judgment and truthfulness of the witness in order that the jury may judge concerning the degree of confidence to be placed in his testimony. Great latitude is usually allowed. *Hathaway* v. *Crocker*, 7 Met. 262, 266. But the right of cross-examination is not an unlimited one. So long as no competent testimony is excluded, the course of the trial may be regulated and restricted by the court in this as in other respects in the exercise of a sound discretion. In the conduct of a trial much must necessarily be left to the judgment and discretion of the presiding judge. In the present case the jury saw the witness and had an opportunity to judge of the degree of credibility to which he was entitled. We cannot say that if the presiding judge was of the opinion that no useful end would be subserved by compelling the witness to disclose his hiding place, or that the credibility of the witness was likely to be affected by anything that would be brought out, that he was wrong in limiting the cross-examination as he did.

Further, while the question as to the exact hiding place of the

witness was excluded, the defendant was permitted to follow up the subject by inquiring as to its direction and distance, and for aught that appears pursued the examination as far as he desired. He did not express any dissatisfaction with the ruling which permitted him to do this, or renew his objection to the exclusion of the question as to the exact hiding place. We think that he ought to have done so if he still intended to insist on his exception and that for this reason also the exception should be overruled.

*Exceptions overruled.*