### COMMONWEALTH *vs.* GANGI CERO.

Suffolk. March 30, 1928. — June 29, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Homicide. Practice, Criminal,* Qualification of jurors, New trial, Appeal with assignment of errors, Exceptions. *Jury and Jurors.*

At the trial of an indictment, the examination of persons called as jurors beyond the inquiry provided for by G. L. c. 234, § 28, is within the discretion of the trial judge.

Previous to the empanelling of the jury at the trial of an indictment charging the defendant with murder, counsel for the defendant challenged the array of jurors and stated to the trial judge that the grounds for the challenge were that, after the jurors had been drawn and listed, each of them was visited by a police officer and interrogated as to his qualifications, family relations, records, religion and other matters concerning him individually; and that the police thereupon submitted a report in

writing of such interrogations to the district attorney. The judge ruled that the jurors were drawn properly. *Held*, that the ruling was correct; nothing appeared from the statement of counsel to show that the list of jurors was prepared, or the jurors drawn therefrom, improperly.

After making the ruling above described, the judge empanelled the jury, examining each juror under G. L. c. 234, § 28. After such examination he declined to ask the jurors any further questions; and refused to permit the defendant's counsel to ask the jurors whether they had been interrogated by the police. The defendant's counsel made no offer of evidence in support of his statement made in challenging the array. *Held*, that no error appeared.

An exception, saved at the trial of an indictment, as to which no assignment of error is made, is not open to the defendant upon an appeal to this court with an assignment of errors.

After a verdict of guilty at the trial above described, the defendant filed a motion for a new trial on the grounds that the verdict was against the evidence, the weight of the evidence, and the law. There was evidence at the trial that the deceased was shot at close range in a street; that a man threw down a revolver and ran from the scene of the shooting; that a man recognized as the defendant was seen to run away from the scene of the shooting, dropping something from his hand as he ran; that there were many people running in the street after the accident; and that the bullet which killed the deceased was fired from the revolver left in the street. The defendant denied firing the shot or running away; and there was other evidence for the defendant that another man fired the shot, dropped the revolver and walked slowly away. The motion was denied. *Held*, that the judge was warranted in denying the motion.

A motion for a new trial of the indictment above described on the ground of newly discovered evidence properly was denied by the judge in the exercise of his discretion.

It *was stated* that an exception to the denial of a motion for a new trial of an indictment for murder based on a ground which might have been raised at the trial brings to this court no question of law.

The defendant filed a third motion for a new trial of the indictment above described, alleging that his counsel had challenged the array of jurors on the ground that they or members of their families had been interrogated by police officers as to their qualifications as jurors according to a certain questionnaire, which was filled out and signed by the inquiring officer and delivered to the district attorney, so that the jurors were so intimidated as to be partial to the Commonwealth and did not constitute an impartial and legal jury; and that the trial judge erred in refusing to allow the defendant's counsel to interrogate each juror during the empanelling of the jury as to his being intimidated by such conduct of the police officers. It was agreed that the jurors were interrogated by the police and that the answers obtained were submitted to the district attorney. Nothing appeared to show that the answers to the questionnaire were not open to inspection by the defendant, or that there was coercion or improper influence or conduct used in obtaining the answers. The motion was denied. *Held*, that

(1 ) It could not be said that the interrogation by the police above

described was an attempt to influence the jurors in favor of the Commonwealth; or that the jury thus obtained was necessarily not impartial and indifferent;

(2) No error appeared in the denial of the motion.

INDICTMENT, found and returned on June 15, 1927, charging the defendant with the murder of Joseph Fantasia on June 11, 1927.

The defendant was tried in the Superior Court before *Cox*, J. The empanelling of the jury is described in the opinion.

There was evidence for the Commonwealth that Fantasia was shot at close range upon a street in Boston. A witness testified that he heard a shot, saw Fantasia fall, and saw a man, whom he identified as the defendant, run away from the scene of the shooting; that the defendant dropped something from his hand as he ran away; and that the witness ran after him and kept him under observation until he was arrested by the police. Another witness identified the defendant as the man who ran away, with the first witness running after him. There was other evidence that there were many people running in the street after the shot was fired; that a man threw a revolver down and ran away; and that the bullet which killed Fantasia was fired from that revolver. The defendant testified, denying that he fired the shot or that he ran away. There also was evidence for the defendant that another man fired the shot, threw away the revolver and walked slowly away.

The jury found the defendant guilty. Thereafter he filed three motions for a new trial, described in the opinion, which were denied; and filed an appeal with an assignment of errors.

The case was argued at the bar in March, 1928, before *Rugg*, C.J., *Braley*, *Crosby*, *Pierce*, & *Wait*, JJ., and afterwards was submitted on briefs to all the Justices.

*W. R. Scharton*, (*M. Palais* with him,) for the defendant.

*J. A. Scolponeti*, Assistant District Attorney, for the Commonwealth.

PIERCE, J. On June 15, 1927, the defendant, Gangi Cero, was indicted charged with murder in the first degree of one Joseph Fantasia. On November 15, 1927, he was set at the bar and tried before a judge of the Superior Court and a jury.

He was found guilty of murder in the first degree on November 17, 1927.   The case is before this court upon a claim of appeal, the assignment of errors being based on certain exceptions to the judge's refusal to allow the defendant's motion to challenge the array of jurors, and also to his refusal to allow the defendant the right to introduce evidence, through questions to the jurors drawn, tending to prove that they were not indifferent and impartial.   These assignments of error are numbered in the record of appeal 1, 2, 3 and 4.

Before the jury were empanelled counsel for the defendant made the following statement to the court: "May it please the court: I now respectfully challenge the entire array of jurors which are about to be drawn to try the case of Commonwealth *vs.* Gangi Cero; and the grounds I will state as follows: That the jurors as required by law were drawn by the election commissioners and duly notified.   It has come to my attention that after their notification of having been drawn as jurors and properly listed as jurors for the November sitting of the criminal session of Suffolk County, each and every one of those jurors was visited by police officers at their homes, or in their respective precincts, or otherwise, or where they resided, and were interrogated as to their qualifications; as to their family relations, as to records, their religion, as to matters concerning them individually.   And that later on the police, after such investigation of said jurors, made a report in writing and submitted said report to the district attorney.   I contend that such proceeding is against the law and is a violation of the constitutional rights of the defendant to have a fair, unprejudiced and impartial trial by his peers, a trial without intimidation, fair and impartial, as guaranteed him by the Massachusetts Bill of Rights, the Massachusetts Constitution, and the Constitution of the United States.   And I therefore challenge the whole array of jurors and ask the court to preserve my rights.   And if your Honor will permit, to have this challenge apply to each and every juror as drawn, so I will not interrupt the proceedings of the court."   At the close of the statement the judge and counsel for the defendant had the formal conference which follows: THE JUDGE: "Have you finished?"   COUNSEL: "Yes, your

Honor." THE JUDGE: "The jurors are properly drawn, and I will save your rights." This ruling is the basis of the defendant's exception numbered 1.

The following then took place: DEFENDANT'S COUNSEL: "I make a motion and ask the district attorney —" THE JUDGE: "You said you had finished. We will proceed now with the empanelling of the jury." DEFENDANT'S COUNSEL: "I ask the district attorney to produce before you now the proof of my assertion, and bring before the court the police reports as to each and every juror, and that be the proof I desire to offer." THE JUDGE: "I took your word that you said you had finished. If you want to make any request of the district attorney that is not for me to pass upon until the time arrives, unless there is some refusal or something of that sort." DEFENDANT'S COUNSEL: "Then you will require me to make my challenge to each and every juror as drawn, and to ask each juror if he has been visited by the police officer, who inquired about his qualifications." THE JUDGE: "I don't propose to permit you to interrogate any juror. I will conduct the examination as to the questions under the statute." DEFENDANT'S COUNSEL: "Your Honor will save my exception, that it is in violation of the statute, because no police officer has any right to question the juror as to his qualifications." This exception is numbered 2. The judge then said: "There is nothing before me, as I have said. You will now proceed." DEFENDANT'S COUNSEL: "Your Honor will save my rights." THE JUDGE: "As I said before, you presented your motion and I asked you if you had concluded, and you replied you had, and I am proceeding on that reply." DEFENDANT'S COUNSEL: "Then I ask the district attorney to take the witness stand, to show the jurors have been interrogated by the police officer."

The prisoner was then set at the bar to be tried and the clerk said to him "Gangi Cero, you are now set at the bar to be tried, and these good men whom I shall call are to pass between the Commonwealth and you upon your trial. If you would object to any of them you shall do so as they are called and before they are sworn. You have a right to challenge twelve of their number without assigning any

reason therefor, and so many of the others as you have good cause to challenge." Although the record on the subject is silent, we assume the name of each juror was drawn from a box in accordance with the provisions of G. L. c. 234, § 26. The record discloses that the judge under G. L. c. 234, § 28, examined each juror, after he had taken the oath, to learn whether he was related to either the prisoner at the bar or to the deceased, whether he had any interest in the case, whether he had expressed any opinion or was conscious of any bias or prejudice in the case, whether his opinions were such as to preclude him from finding a person guilty of an offence punishable by death, and if he would find a person guilty if the evidence satisfied him beyond a reasonable doubt of the guilt. At the close of the examination of the first juror called, the judge declared the juror stood indifferent. The clerk then said: "Prisoner look upon the juror; juror look upon the prisoner." The district attorney said: "Satisfactory to the Commonwealth." Counsel for the defendant then said: "I understand your Honor will not permit me to ask the question whether this juror has been interrogated by the police?" The judge replied: "I have passed upon that question." DEFENDANT'S COUNSEL: "I desire you to ask this question of the juror, whether or not he has been interrogated by the police." THE JUDGE: "I won't ask him any more questions." DEFENDANT'S COUNSEL: "Your Honor will allow me an exception to that." This is exception 3. The juror was then challenged by the defendant. Except that counsel for the defendant did not again ask to examine each juror whether he had been interrogated by the police, nor request the judge so to do, the same procedure was observed in the examination of the jurors on their *voir dire* until the panel was complete.

The exceptions numbered 1 and 2, in so far as they relate to the refusal of the judge to give any recognition to the defendant's challenge to the array of jurors, must be overruled. There is not a word, not a phrase, in the statement of counsel for the defendant which, if proved, would have the slightest evidential value in establishing that the list of jurors was not prepared according to law or that the jurors

were not legally drawn therefrom. *Commonwealth* v. *Walsh,* 124 Mass. 32. *Commonwealth* v. *Sacco,* 255 Mass. 369, 417.

The third exception, which we assume runs through the examination on *voir dire* of all the jurors, is based upon the refusal of the judge to permit the defendant to examine each juror whether he had been interrogated by the police, and to the refusal of the judge to ask any further question than the statutory questions. It is provided by G. L. c. 234, § 28: "Upon motion of either party, the court shall, or the parties or their attorneys may under the direction of the court, examine on oath a person who is called as a juror therein, to learn whether he is related to either party or has any interest in the case, or has expressed or formed an opinion, or is sensible of any bias or prejudice, therein; and the objecting party may introduce other competent evidence in support of the objection. If the court finds that the juror does not stand indifferent in the case, another shall be called in his stead." It was said in *Commonwealth* v. *Burroughs,* 145 Mass. 242, 243, "While the statute [Pub. Sts. c. 170, § 35] permits, after the statutory questions have been propounded, the party to a suit to introduce any other competent evidence, it was not intended to give him the right to submit the juror to an inquiry in the nature of a cross-examination, in order to ascertain if he could not thereby elicit something tending to show bias or prejudice on the part of the juror. The other competent evidence which he may of right introduce is that obtained from other sources than from an examination of this character. Undoubtedly the presiding judge, if he deems it desirable in determining whether a juror stands as impartial, may himself examine or permit an examination of the juror beyond the inquiries provided for expressly by the statute; but beyond these statutory provisions the whole matter of such examination is left to his sound judgment and judicial discretion." After the passage of St. 1887, c. 149, which enacted that the examination of jurors provided for by Pub. Sts. c. 170, § 35, "may be made by the parties or their attorneys under the direction of the court," it was said by Holmes, J., in *Commonwealth* v. *Poisson,* 157 Mass. 510, at page 512: "It would be unfortunate if all control of such an

examination should be taken from the court, and we do not interpret the St. of 1887, c. 149, as having that effect. On the contrary, the power given by the St. of 1887 to the parties to make the examination provided for by the Public Statutes, is in terms, to make it 'under the direction of the court.' There is still a discretion, and, in our opinion, it is exercised wisely by not going beyond the usual questions, unless something appears which makes it proper to go further." These judgments were followed by this court in the construction given to R. L. c. 176, § 28, and to G. L. c. 234, § 28. *Commonwealth* v. *Phelps*, 209 Mass. 396, 414. *Commonwealth* v. *Spencer*, 212 Mass. 438, 445. *Commonwealth* v. *Sacco*, 255 Mass. 369, 418. Under the decisions and the established practice the judge conducted the examination himself and the defendant had no right which was violated by the refusal of the judge to permit his counsel to examine or cross-examine the jurors as to their bias or impartiality. Likewise, no legal harm resulted to the defendant from the refusal of the judge to ask each juror after he had been sworn, "whether or not he has been interrogated by the police." The question manifestly was but a preliminary one, and if answered "Yes" would not have afforded any reason for rejecting the juror. Upon the refusal of the judge to ask any more questions than those which are called for by the statute, the defendant's counsel made no offer of evidence in support of his opening statement or any suggestion that he was prepared to produce testimony in support of his statement. Exceptions 3 and 4 present no error of law, and are overruled.

The record discloses numerous assignments of error which have not been argued. A careful examination shows that the defendant has suffered no legal harm because of them. No assignment of error was made as to exception No. 5. Hence that is not open to the defendant under § 33D, added to G. L. c. 278 by St. 1925, c. 279, § 1.

After a verdict of "Guilty" was returned by the jury, the defendant filed three motions for new trial.

1. The reasons stated in the first motion were that the verdict was against the evidence, the weight of the evidence and the law. An examination of the record shows abundant

evidence in support of all the material allegations of the indictment, and the judge was warranted in refusing to grant the first motion for a new trial. *Commonwealth* v. *Morrison,* 134 Mass. 189.

2. In substance, the second motion, "A," rests upon an allegation of newly discovered evidence, supported by affidavits to the effect that the defendant is not the person who shot Joseph Fantasia. This motion was overruled rightly by the judge in the exercise of his judicial discretion. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 25. *Commonwealth* v. *Bannon,* 254 Mass. 320, 325. *Commonwealth* v. *Sacco, supra.*

3. The third motion, "B," alleges the following reasons: (1) "That when said case was called for trial and the jury about to be empanelled, defendant's counsel made a challenge to the array of the jury upon the ground that after the jurors were drawn by the election commissioners and examined as to their qualifications for jury service, pursuant to the provisions of St. 1924, c. 311, § 2, and said jurors were thereafter duly notified and properly listed as jurors for the November, 1927, sitting of the criminal session of this court, various police officers interviewed some of the jurors in person and other jurors through their respective families as to their qualifications based upon questions set forth in a questionnaire, a copy of which is hereto annexed marked 'A'; that after said questionnaire was filled out with the answers thereto respecting each juror and signed by the investigating officer, the same were delivered to the district attorney of this county for his use and that of his assistants in selecting jurors, and particularly for the selection of the jurors in this case, but said questionnaires were not made available for the use and inspection of the defendant and his counsel; that said interview and examination of the jurors by said police officers was and is illegal and in violation of said statute, and was done without authority of law or otherwise; that by reason of said unlawful action the jurors when selected were jurors who had been intimidated to such an extent as to become partial jurors to the Commonwealth, and thereby prevented and deprived the defendant from having a fair and impartial trial as guaranteed by the Bill of Rights and Constitution of this Commonwealth and by the Consti-

tution of the United States; and, furthermore, defendant avers that said jurors so tampered with as aforesaid constituted an illegal, packed jury, and not impartial, unbiased and indifferent, resulting in material injury to the defendant, in that the defendant was deprived of the opportunity of being tried by an impartial jury from which the defendant might expect exact justice"; (2) "That the court erred in declining to permit defendant's counsel to further interrogate each juror as to being intimidated by the conduct of the police officers who made the inquiries and investigation set forth in the foregoing paragraph in connection with the questionnaire marked 'A', attached hereto, as provided by G. L. c. 234, § 28, in addition to the statutory questions propounded to each juror, because there was manifest reason, as stated to the court, for doing so." The third ground set forth in this motion related to alleged misconduct of a juror. The denial of the motion inferentially shows that the judge found that these allegations were not true.

At the hearing on this motion the defendant offered in evidence a certain questionnaire,* a copy of which is annexed to motion "B."

---

\* "Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Name in full. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Age. . . . . . . . . . .

Residence. . . . . . . . . . . . . . . . . . . . . . . .Ward. . . . . . . . . . . .Precinct. . . . . . . . . . .

Style of living. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Business. . . . . . . . . . . . . . . . . . . . . . .Business Address. . . . . . . . . . . . . . . . . . .

Property Owner. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Married or Single. . . . . . . . . . . . . . . . . . . . . . . . .Living with Wife. . . . . . . . . . . . .

Character and Associates. . . . . . . . . . . . . . . . . . . . . . . . . . . . .Habits. . . . . . . . . . . .

Is he a man addicted to drinking?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Does he lead a fast life?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Politics. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .What faction? . . . . . . . . . . . . . . .

Is he a college graduate?. . . . . . . . . . . . . . . . . . . . . .Common School?. . . . . . . . . . .

Lodge affiliations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Affiliations with politicians. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Affiliations with law and lawyers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Ever served on jury?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Is he related to any employee in City, County or State?. . . . . . . . . . . . . . . . .

Was he ever in the employ of the City of Boston?. . . . . . . . . . . . . . . . . . . . . . .

Has he a criminal record? If so, state facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(This is very important. Examine records at B.C.I., and at office of Probate Commission, 174 Court House, Pemberton square.)

Is he related to any former Boston Police Officer who abandoned his duty on or about Sept. 9, 1919, or who was discharged from the Department for causes arising out of that situation?

General Remarks,

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Division. . . . . . . .Investigating Officer."

He further produced a number of police officers and, after they were sworn, offered to prove by their testimony that each of them had received a copy of the questionnaire and was instructed by his superior officer to make inquiries of men who were drawn to serve as prospective jurors for the November term; that each prospective juror was seen individually by some officer, or that members of his family were interviewed, and that the person seen or conversed with was asked and answered the questions of the questionnaire; that the answers thus given were written down by the officer and that underneath the words "General Remarks" he wrote, this man is, or is not, "O. K." for jury service. The defendant further offered to prove, by the testimony of the superintendent of police, that orders were issued to the division commanders to assign police officers to interrogate selected jurors, and that orders were given that the replies made be transmitted to the district attorney's office of Suffolk County for use in connection with the selection of jurors in any criminal case. The evidence offered by the defendant and excluded by the judge, subject to the exception of the defendant, is reported and appears in the record. "For the purpose of this record it has been agreed between the district attorney and counsel for the defendant that all of the jurors, who were selected to serve in the above case and who deliberated upon the evidence, were the same jurors, who, after they were duly qualified by the board of election commissioners, pursuant to the provisions of St. 1924, c. 311, § 2, were interrogated by the various police officers either in person or through their immediate relations as to their fitness, and that the answers so given by said jurors were reduced in writing and later submitted to the district attorney's office for its use in any way they saw fit." In this connection it is to be noted that the form of the questionnaire was prepared by the commissioner of police for general use; that it was not directed to the case at bar; and that there was no proof offered that it was not open to the inspection of the defendant upon reasonable and proper request.

This motion for new trial was addressed to the discretion of the judge and his action must stand unless there was a

clear abuse of it.   It is apparent from what occurred when the jury were empanelled that the defendant knew at that time all about the questionnaire.   He might, and ought then in proper form, to have raised every question of law on that subject which he undertook to raise on the motion for a new trial.   An exception to the denial of a motion for new trial brings before this court no questions of law which might have been raised at the trial; and such questions commonly will not be considered when attempted to be raised on motion for a new trial even in a capital case.   *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24, and cases there collected. *Commonwealth* v. *Sacco*, 255 Mass. 369, 456.   *Commonwealth* v. *Madeiros*, 257 Mass. 1, 2.   *Commonwealth* v. *Gedzium*, 261 Mass. 299, 308.   It is familiar law in criminal cases of lesser magnitude than first degree murder.   *Commonwealth* v. *Barney*, 258 Mass. 609, 610.   *Commonwealth* v. *Clifford*, 254 Mass. 390, 393.   *Commonwealth* v. *Bannon, supra.*   The questions which were put to the jurors or to members of their families and were answered by them are innocent of offence in themselves; and there is nothing in the record from which it can be found or inferred that those questioned were asked in an improper manner or that they answered under the impulsion and influence of the office which the interrogators held and visibly exercised; and there is no evidence that would warrant an assumption that the person interviewed thought or acted otherwise than he would have had the questions been put by any one other than a police officer.   In the case at bar, as there was no evidence of coercion or improper influence in obtaining the answers to the questionnaire, or of any accompanying misconduct of any nature, the only question is, Does such a search into the intimate life of a person drawn to serve as a juror, by any interested party, violate any express law or tend to the obstruction of justice if such information is sought in good faith directly from the prospective juror or from any member of his family?   We are unable to see how such an investigation, properly conducted, can be interpreted, as the defendant contends, to be an "attempt to influence the jurors in favor of the Commonwealth."   Nor do we see how a jury

serving under such circumstances is necessarily not an impartial and indifferent jury.

As we perceive no error in the conduct of the trial or in the motions for new trial, the entry must be

*Judgment on the verdict.*