COMMONWEALTH *vs.* NEWELL P. SHERMAN.

Worcester.  April 6, 1936. — May 25, 1936.

Present: RUGG, C.J., PIERCE, FIELD, & DONAHUE, JJ.

*Practice, Criminal,* Qualification of jurors; Argument by counsel; Confession; Requests, rulings and instructions.  *Jury and Jurors.  Witness,* Credibility, Cross-examination.  *Evidence,* Confession.

The mere facts, that persons, summoned as jurors for trial of an indictment for murder, were interrogated, by direction of the district attorney and without the presence of, notice to or knowledge of the defendant or anyone representing him, to ascertain facts relating to their fitness to serve in the case, and that their answers were submitted to the district attorney for his use, did not as matter of fact show that by reason thereof they became so biased or prejudiced that they did not stand indifferent, nor as matter of law disqualify them or any one of them for service.

On the record, no error appeared in the exclusion, during cross-examination of a police officer called as a witness for the Commonwealth at the trial of an indictment for murder, of a copy of a newspaper containing a photostatic copy of an alleged confession in writing by the defendant, nor of a question then asked of the officer, "Why did you allow that to be photographed?"

It is improper for counsel in argument to a jury to state his personal belief; and an interruption, by the judge presiding at the trial of an indictment for murder, of the argument by the defendant's counsel to direct him not to express his personal belief as an argument to the jury showed no error.

Adequate instructions were given to the jury at the trial of an indictment for murder to the effect that if an alleged confession, which was in evidence, had been procured by police officers by the use of force, intimidation or inducements of any sort, it would not be a voluntary confession and should be disregarded, though the officers might properly admonish the defendant to tell the truth; and no error was shown in the failure of the judge to give "word for word" specific instructions on the subject requested by the defendant, or to deal specifically with certain alleged statements by the officers to the defendant embodied in the requests, such statements being merely fragments of the evidence on the issue of the confession.

INDICTMENT, found and returned on August 21, 1935, charging the defendant with murder.

The indictment was tried in the Superior Court before *T. J. Hammond*, J. The defendant was found guilty of murder in the first degree and filed an appeal with assignments of error.

*J. F. Humes*, (*W. W. Buckley* with him,) for the defendant.

*O. W. Hoban*, District Attorney, (*A. B. Cenedella & A. A. Gelinas*, Assistant District Attorneys, with him,) for the Commonwealth.

FIELD, J. The defendant was indicted for the murder on July 20, 1935, of Alice D. Sherman, by drowning her in Lake Singletary. The victim was the wife of the defendant. The evidence at the trial included evidence of oral statements by the defendant and of a typewritten statement signed by him, in the nature of a confession of the crime charged. A verdict of murder in the first degree was returned. The case comes before us by appeal with a concise summary of the record, a transcript of the evidence and an assignment of errors, in accordance with G. L. (Ter. Ed.) c. 278, §§ 33A–33G.

First. The defendant assigns as errors the denial of his "motion to quash the panel of jurors," and the denial of his "motion to excuse Charles E. Kauke from serving on the jury panel."

In accordance with the defendant's demand a list of jurors returned for service in this case (see G. L. [Ter. Ed.] c. 212, § 20) was furnished to him as required by G. L. (Ter. Ed.) c. 277, § 66. After the defendant was set at the bar for trial and the district attorney had moved that a jury be empanelled, but before such motion was allowed, the defendant filed a written motion "that the panel of jurors returned for service in this case be quashed: Because each and every one of said prospective jurors after he had been duly qualified pursuant to the provisions of General Laws, Chapter 234, section 4, Tercentenary Edition, was privately interrogated as to his fitness to serve in this particular case by various State police officers at the request and by the direction of the District Attorney and the answers given by said prospective

jurors were reduced to writing by said interrogators and submitted to the District Attorney for his use in this case. And because neither the defendant nor his counsel, nor anyone else representing him was present when any of said prospective jurors was interrogated as aforesaid or had any notice or knowledge as to when said jurors were to be interrogated or as to the questions to be propounded to them. And because by reason of the foregoing facts which the defendant is ready to verify, each and all of said jurors became disqualified to pass judgment upon the indictment, and if he is compelled to go to trial before any twelve of them he will be deprived of the fair and impartial trial to which he is entitled." The facts alleged in the motion were not "verified by affidavit, . . . apparent upon the record and files, or . . . agreed and stated in writing signed by the attorneys for the parties interested." See Rule 46 of the Superior Court (1932).

The district attorney stated: "Before your Honor passes to final decision on this motion, I want to say that the Commonwealth challenges the truth of the assertion in the second paragraph of the motion, to wit, that each and every one of said prospective jurors was privately interrogated as to his fitness to serve in this particular case by various State police officers at the request and by the direction of the District Attorney, and the answers given by such respective jurors were reduced to writing by said interrogators and submitted to the District Attorney for his use in this case. I challenge the statement. It is not so, and let the matter rest there. I want the record to clearly show that the Commonwealth challenges this motion on the ground that it is not a correct statement of the fact." Counsel for the defendant stated: "As far as within our knowledge, it is a correct statement." No evidence was introduced. And no offer of proof of the facts alleged in the motion was made by the defendant unless by the statement in the motion that "the defendant is ready to verify" the facts therein alleged or by the statement of counsel for the defendant above recited. The judge said: "I think it is covered by the case of *Commonwealth* v. *Cero*, and other cases, an established practice to find out what the

personnel, make-up of the prospective jurors were," and denied the motion, and the defendant excepted.

After several jurors had been selected and sworn, Charles E. Kauke, a person returned for service as a juror in this case, was examined on the *voir dire*, found to stand indifferent and declared satisfactory to the Commonwealth. The following colloquy then took place: "Mr. BUCKLEY [Counsel for the defendant]. The defendant will be advised by counsel that this juror is acceptable, but some time we have to raise the question we have in mind, and I would like to raise it now without waiving any of his rights. The COURT. That is all right. You mean it is a renewal virtually of the motion that you made against the general array at the outset? Mr. BUCKLEY. Yes. The COURT. But in this case you want to renew your contention as against this individual juror? Mr. BUCKLEY. Yes. The COURT. On the same grounds set forth in the motion to quash? Mr. BUCKLEY. Yes. The COURT. Very well, that is understood, and you want this in the form of a motion, that this juror be excused, I suppose. Mr. BUCKLEY. Yes, on the ground he has been questioned by the District Attorney's office. The COURT. You mean by the District Attorney's office personally? Mr. BUCKLEY. No, but he has been examined as to his qualifications by police officers at the behest of the District Attorney's office. The COURT. Yes. Anything you want to say? Mr. HOBAN [District Attorney]. Yes. I challenge that statement. The COURT. Anything further? Mr. BUCKLEY. No. Mr. HOBAN. And in the absence of proof that this man has been interrogated. Mr. BUCKLEY. We set forth in our motion we are ready to verify the statement set forth in the motion. If you want verification, of course, we have to stop this proceeding here and offer our proof. The COURT. What do you contend was done more than the questionnaire, usual and general form as to occupation, residence, etc.? Mr. BUCKLEY. Our contention is, your Honor, it was all done without the knowledge of the defendant or counsel representing the defendant. The COURT. Your point is this, when interviewed by the State Police? Mr. HUMES [Counsel for the defendant]. At the request of

the District Attorney? The COURT. When interviewed there was no one present representing the defendant? Mr. BUCKLEY. Absolutely. The COURT. That is your objection. Mr. HUMES. And we had no knowledge or notice. That is set out in the motion. It is on the same ground as the original motion, only applying to this individual juror. The COURT. It is not the form of the questionnaire. It is the way and the manner? Mr. HUMES. Not so much, no. The COURT. I deny the motion, and so rule. This juror stands indifferent, as far as the interviewing of the juror or motion relative to disqualification of the juror because of the fact he was so interviewed. That motion I deny. The defendant excepts to that and exception is duly noted. . . . The COURT. The whole proposition being you were not so notified they were to interview the juror and did not have an opportunity to be present when he was questioned as to his occupation, etc., the questions put forth by the officer. Mr. BUCKLEY. Yes. The COURT. The District Attorney denies that was the situation. Do you want anything on the record, Mr. Hoban? Mr. HOBAN. I challenge the statement, first, that this juror was interrogated personally, as I have a distinct recollection that before the returns were made on the questionnaire, Mr. Buckley came to see me about it and I told him frankly what they were, so I think — The COURT. As to the form? Mr. HOBAN. No, I told him we were making an investigation of the jury, and it had not been completed at that time. He asked me if I thought he should make an investigation, and I said, 'You are at perfect liberty to do so, if you see fit, and if you require expense money to do it I shall not object to it being allowed to you.' That is all that was said about it. I would like to have that in the record. The COURT. It is in the record. Mr. HUMES. I think because of my own position in this case, having been appointed by the Court, we should be permitted to raise that question with the statement I knew nothing about it, had no knowledge or intimation anything of that kind was to be done until we read in the newspapers it was being done. The COURT. The statement by Mr. Hoban is, I take it, in substance, while in the process and

before completed, you did know of it, and that following that investigation there was this conference with Mr. Buckley. That is what I take the sum and substance of Mr. Hoban's statement to be. Am I correct? Mr. HOBAN. That is right. The COURT. That is on the record." The juror was then declared satisfactory to the defendant and the judge stated that it might appear that the defendant did not waive the objection previously taken.

1. The denial of the defendant's motion "to quash the panel of jurors" was not error.

This motion in substance, if not in form, was in the nature of a challenge to the array. It was directed to the entire "panel of jurors returned for service in this case" and was based on the ground that all these jurors were disqualified for such service. See *Commonwealth* v. *Walsh*, 124 Mass. 32, 35; *Commonwealth* v. *Best*, 180 Mass. 492, 493; *Hinckley* v. *Perrin*, 253 Mass. 527; *Commonwealth* v. *Cero*, 264 Mass. 264, 267–268; *Commonwealth* v. *Welosky*, 276 Mass. 398, 400. We assume in favor of the defendant, but do not decide, that the question of disqualification sought to be raised by the motion could properly be so raised with respect to all the jurors, and that the defendant was not restricted to raising this question with respect to each individual juror at the time of his examination on the *voir dire*. See *Hinckley* v. *Perrin*, 253 Mass. 527; *Commonwealth* v. *Cero*, 264 Mass. 264, 267–268.

The allegations of fact in the motion, even if they were true, which the Commonwealth denied, did not show any ground in law for the allowance of the motion. There is no allegation or contention that the jurors were not drawn and summoned according to law. See G. L. [Ter. Ed.] c. 234. Indeed the motion recites that they "had been duly qualified pursuant to the provisions of General Laws, Chapter 234, section 4, Tercentenary Edition." The motion states as a conclusion of law that "each and all of said jurors became disqualified" by reason of facts previously alleged in the motion. The facts so alleged are (a) that "each and every one of said prospective jurors . . . was privately interrogated as to his fitness to serve in this particular case

by various State police officers at the request and by the direction of the District Attorney;" (b) that "the answers given by said prospective jurors were reduced to writing by said interrogators and submitted to the District Attorney for his use in this case," and (c) that "neither the defendant nor his counsel, nor anyone else representing him was present when any of said prospective jurors was interrogated as aforesaid or had any notice or knowledge as to when said jurors were to be interrogated or as to the questions to be propounded to them."

The effect on the qualifications of persons drawn to serve as jurors in the trial of a capital case of the fact that after such prospective jurors were summoned according to law and before the case was called for trial they were interrogated by police officers has been considered in recent cases. See *Commonwealth* v. *Cero*, 264 Mass. 264; *Commonwealth* v. *Millen*, 289 Mass. 441, 476, 478, 485; *Commonwealth* v. *DiStasio, ante,* 273, 281–282. Under these decisions the fact, without more, that prospective jurors were so interrogated would not as matter of law disqualify them for service as jurors or as matter of fact show that they were so biased or prejudiced thereby that they did not stand indifferent. *Commonwealth* v. *Cero,* 264 Mass. 264, 271, 275. *Commonwealth* v. *Millen,* 289 Mass. 441, 475. Some further fact with respect to the nature of the questions asked or other circumstances attending the interrogation of the prospective jurors calculated to influence them, or with respect to the harmful effect upon them of such interrogation, must appear in order to furnish a basis for a finding of impairment of their impartiality. *Commonwealth* v. *Cero,* 264 Mass. 264, 269, 271, 275. *Commonwealth* v. *Millen,* 289 Mass. 441, 478. No such further fact is alleged in the motion. The allegations that the prospective jurors were interrogated as to their "fitness to serve in this particular case," that the interrogation was "at the request and by the direction of the District Attorney," that the answers were "submitted to the District Attorney for his use in this case," and that "neither the defendant nor his counsel, nor anyone else representing him was present" when any

of the prospective jurors were interrogated, or "had any notice or knowledge as. to when said jurors were to be interrogated or as to the questions to be propounded to them," do not take the case out of the principle stated. Even if these allegations were true, without more, they furnish no ground for an inference that the prospective jurors were so influenced by being interrogated that their impartiality was impaired. See *Commonwealth* v. *DiStasio, ante,* 273, 282; *Commonwealth* v. *Millen,* 289 Mass. 441, 485. And if no harmful influence was exercised in obtaining information in regard to prospective jurors, the use of such information by the district attorney would be proper and would not disqualify such jurors. See *Commonwealth* v. *Wong Chung,* 186 Mass. 231, 237. It follows that there was no error in denying the motion summarily. *Provident Institution for Savings* v. *Burnham,* 128 Mass. 458, 461. *Commonwealth* v. *Cero,* 264 Mass. 264, 267–268, 269–270. Evidence in support of the allegations of the motion, if introduced, would not have aided the defendant. Whether, if such evidence would have aided the defendant, the denial of the motion could have been sustained on the ground that no sufficient offer of proof was made by the defendant need not be considered. No evidence of any fact beyond the scope of the motion tending to show that the prospective jurors were disqualified was introduced. And clearly no offer of proof of any such fact was made by the defendant.

2. The denial of the defendant's motion "to excuse Charles E. Kauke from serving on the jury panel" was not error.

This motion was made when this prospective juror was being examined on the *voir dire.* The judge found that he stood indifferent. His indifference was a matter of fact to be determined by the judge, whose decision was final unless vitiated by error of law. *Commonwealth* v. *Millen,* 289 Mass. 441, 478. The grounds in law on which the defendant relies as disqualifying this individual juror are the same as those relied on by the defendant to support the motion already considered to "quash the panel of jurors." However, as stated with reference to the array in connection with that motion, the facts alleged, if true, without more,

would not show that this individual juror did not stand indifferent. In connection with the present motion it was admitted by the Commonwealth that an investigation of the prospective jurors was made by police officers under direction of the district attorney, and that a report was made to him of "questionnaire, usual and general form as to occupation, residence, etc." The facts so admitted do not go beyond the scope of the allegations of fact in the motion, but, on the contrary, fall far short of those allegations. These facts do not show that this individual juror did not stand indifferent. The Commonwealth did not admit that this individual juror was interrogated personally or that the investigation of prospective jurors admittedly made was carried on without the knowledge of counsel for the defendant. The defendant, however, did not request the judge in his discretion to question this juror on the *voir dire* with respect to the facts alleged in the motion or related matters. See *Commonwealth* v. *Millen*, 289 Mass. 441, 475; *Commonwealth* v. *DiStasio*, *ante*, 273, 280, 282. Nor did the defendant introduce or offer or propose to offer any "other competent evidence" beyond the scope of the motion in support of his objection to this individual juror. See G. L. (Ter. Ed.) c. 234, § 28; *Commonwealth* v. *Burroughs*, 145 Mass. 242, 243; *Commonwealth* v. *Cero*, 264 Mass. 264, 271; *Commonwealth* v. *Millen*, 289 Mass. 441, 478, 485. And it is at least doubtful whether statements of counsel for the defendant at the hearing on the present motion can be regarded as an offer, or a proposal to offer, competent evidence in support of the allegations of the motion. But even if such statements are to be given the force of an offer of proof of the facts alleged in the motion the defendant suffered no harm by reason of the failure to receive such proof since, as already stated, the facts alleged, even if true, would not show that this juror did not stand indifferent.

Second. The defendant assigns as error the refusal of the judge, subject to the defendant's exception, to admit in evidence, during the cross-examination of Corporal Thompson of the State police, a witness for the Commonwealth, a copy of a newspaper (The Worcester Telegram of July 23,

1935) which contained a photostatic copy of the alleged confession of the defendant signed by him, and the refusal of the judge, subject to the defendant's exception, to allow the defendant on such cross-examination to ask this witness, "Now, Mr. Thompson, why did you allow that (meaning the alleged confession) to be photographed?"

Before this newspaper was offered in evidence the witness had admitted that on the afternoon of July 22, 1935, he had permitted a newspaper photographer to make a photostatic copy of the alleged confession.

The basis for the exception to the exclusion of the newspaper as stated in the assignment of errors is that "the jury had the right to say that the purpose of the witness in allowing this newspaper man to make a photostatic copy of this paper was to give undue and unnecessary publicity to the so called confession and thereby create a public sentiment hostile to the defendant which sentiment would to some extent be reflected in the jury room," and that the defendant "had a right to show that the photostatic copy was actually published." And the basis for the exception to the exclusion of the question asked this witness, as stated in the assignment of errors, is that this witness "had allowed a newspaper photographer to make a photostatic copy of this paper and the defendant for the purpose of affecting his credibility had a right to inquire into his motive for doing so."

There was no error in excluding the evidence.

There is nothing in the transcript of the evidence to suggest that the newspaper was offered in evidence at the trial before the jury for the purpose of showing that they were influenced by the publicity given to the alleged confession. This ground for admitting the newspaper was neither obvious nor actually taken by counsel. *Rothwell* v. *First National Bank of Boston*, 286 Mass. 417, 422. But, in any event, the newspaper was not admissible for this purpose. This was a matter affecting the indifference of the jurors, and the judge and not the jury was the tribunal to determine whether they stood indifferent. *Commonwealth* v. *Millen*, 289 Mass. 441, 478.

At the trial the newspaper was offered, as then stated by counsel, "On the credibility of the witness." But it was not apparent that the fact that a photostatic copy of the alleged confession was published in a newspaper tended to show any bias or prejudice on the part of this witness affecting his credibility beyond that which would be shown by his having permitted a newspaper photographer to make a photostatic copy of the alleged confession. And counsel for the defendant made no statement of his hope of showing by the newspaper, in connection with other evidence, bias or prejudice on the part of the witness. See *Stevens* v. *William S. Howe Co.* 275 Mass. 398, 402; see also *Commonwealth* v. *Sansone*, 252 Mass. 71, 75; *Commonwealth* v. *Snyder*, 282 Mass. 401, 417. Nor was it apparent from the question asked this witness — why he allowed the alleged confession to be photographed — that the answer thereto would tend to show such bias or prejudice. However, after the exclusion of the newspaper and the question, counsel for the defendant stated that the evidence was offered to show that the witness had "an interest beyond his official duties." Such counsel was then permitted to examine the witness at length as to whether he had received or been promised any compensation for furnishing any information or the alleged confession to any publishing syndicate, until counsel stated that he was "through with that line." This witness answered the questions in the negative, and no evidence was introduced tending to show that he had received or been promised any such compensation. In these circumstances it does not appear that the judge in the exercise of his discretion improperly restricted cross-examination (see *Commonwealth* v. *Foster*, 182 Mass. 276, 279; *Commonwealth* v. *McDermott*, 255 Mass. 575, 580; *Commonwealth* v. *Mercier*, 257 Mass. 353, 366), or that the exclusion of the newspaper in the course of such examination was harmful to the defendant. See *Commonwealth* v. *Min Sing*, 202 Mass. 121, 130.

*Third.* The defendant assigns as error the exclusion, subject to the defendant's exception, of a question asked

Edward J. McCarthy on cross-examination. This exception was waived in open court. Examination of it, however, discloses no error.

Fourth. The defendant assigns as error an interruption by the judge of the argument to the jury by counsel for the defendant.

The grounds of this assignment are as follows: "The statement or so-called confession signed by the defendant was typewritten. It consisted of an original and three carbon copies. The typing was done by one Mitchell a witness for the Commonwealth, who described himself as a typist 'of a sort'. . . . Mitchell testified that the sheets of paper on which the statement was typed were removed from the typewriter two or three times as the typing progressed, and put back again. . . . The defendant contended that if the four sheets of paper and three sheets of carbon after once being put in the typewriter had been taken out and put back again the lines subsequently written and the margins subsequently made would not correspond exactly, in alignment and spacing with those previously written and made. The defendant also contended that the papers themselves showed no variations whatever." During the argument of counsel for the defendant he said: "Well, then they brought in Mr. Mitchell. He did the typing. He says that he put in four sheets of paper and three sheets of carbon in that typewriter. I don't know that you men know anything about typewriters. If you do, you can apply it now, it is in here. I say it is impossible to put any four sheets of paper and three sheets of carbon" — The judge interrupted, saying, "You have a right to submit the question to the jury whether certain things occurred or did not occur, but you cannot state what your personal belief is as to what happened. Just conform to that ruling. . . . I have not said you cannot argue the proposition. You have a perfect right to argue the proposition but omit your personal views." The stenographer, at the request of counsel for the defendant, read his statement as follows: "I say it is impossible to put in four sheets of paper and three sheets of carbon." And counsel said, "I am going to leave that

out, gentlemen, whether or not in your judgment, it is possible to put four sheets of paper into a typewriter and three sheets of carbon, and then remove them and have the lining exactly as it was before, and the margins. It is not my view, gentlemen, it is your view."

Even if we assume in favor of the defendant that an exception to the interruption by the judge of the argument of counsel was duly saved, there was no error. It is improper for an attorney for a party to state his personal beliefs to the jury. He may not properly in argument make a statement of fact "purporting to be on his personal knowledge or . . . concerning which the inference well might be drawn that he had personal knowledge." *Doherty* v. *Levine*, 278 Mass. 418, 419. See also *Betts* v. *Rendle*, 236 Mass. 441, 444; *Commonwealth* v. *Mercier*, 257 Mass. 353, 376; *Commonwealth* v. *Cooper*, 264 Mass. 368, 374. It may be that the language of counsel was susceptible of the interpretation that his words "I say," by which he prefaced his last statement before the interruption, meant "I contend," "I submit" or "I argue," but an "inference well might be drawn that he had personal knowledge" of the fact stated. In pursuance of the duty of the judge to see that improper arguments were not made to the jury it was within his discretion to guard against the inference that the statement of counsel concerned a matter of which he had personal knowledge by stopping counsel and indicating the proper limits of argument instead of leaving the matter to be dealt with in the charge. See *Commonwealth* v. *Richmond*, 207 Mass. 240, 250; *O'Neill* v. *Ross*, 250 Mass. 92, 96–97; *Commonwealth* v. *O'Connell*, 274 Mass. 315, 323. And the limitation on the argument imposed by the judge was in accordance with law. It did not unduly restrict the scope of argument. Furthermore, there is no sound ground for a contention that the interruption was so prejudicial to the defendant that it was an abuse of discretion on the part of the judge to direct that the objectionable argument end, instead of leaving the matter to be dealt with in the charge.

Fifth. The defendant assigns as error "the refusal of

the Trial Court to give any one of the five following requests" for instructions to the jury.

There was evidence that the defendant on the day after the death of the victim was questioned by State police officers at their barracks. The alleged confession of the crime made by the defendant at that time orally and embodied in a typewritten statement signed by him was admitted in evidence. The requested instructions related to the circumstances under which the alleged confession was made bearing upon the voluntary nature of such confession.

The first of these requested instructions was as follows: (1) "If the jury find that any alleged confession by the defendant, whether oral or written, at the Grafton barracks after he was first taken to Corporal Thompson's room for questioning by the officers was made after any of those officers had said to him 'Now Sherman, I don't know you so very well, but I have known your father for years and he is a good friend of mine, and I feel as sorry about this matter as you do, and the best thing for you to do is to tell the truth to us and we'll go easy with you,' then such confession was not a voluntary confession and must be absolutely disregarded by the jury." The other requests were in the same form, each of them reciting different alleged statements of an officer or officers as follows: (2) "You had better come clean and tell us straight this story; if you don't we'll give you the 'truth serum,'"; (3) "We have studied human nature, and we can tell by looking at you that you are a murderer; just the sort of man that would do a deed like that"; (4) "It will be better for you to confess," or "It will be better for you to tell the truth," or "It will be better for you to come clean," or "You had better tell the truth" or "You had better come clean"; and (5) "The best thing you can do is to go in there and tell McCarthy [one of the officers] the truth of this affair, because he is the very best friend you can have in a case of this kind."

The judge stated that he would endeavor to combine the requests and give them in substance. In his charge he recited the alleged statements of officers embodied in the requests, and instructed the jury upon the defendant's con-

tention that by reason of these alleged statements — the evidence with respect to which was contradictory — the purported confession was not voluntary, in part as follows: "When an officer is questioning a man who is suspected of crime, it is perfectly proper for that officer to warn or admonish a man to tell the truth. It is perfectly proper. Nothing wrong about that. No mistake in procedure. And furthermore, the officer may use any similar expression that has the same meaning, even though it be a slang expression such as, 'Come clean,' or 'Give us the straight story.' If, however, an officer adds to the words of admonishment a promise to help the defendant in any way, such as, 'I will let you off easy,' 'We'll go easy with you,' or uses language that contains threats of personal injury or harm, or in any way creates fear in the mind of the defendant, the confession must be rejected. Now, I instruct you that if you find that any alleged confession by the defendant, whether it was oral or written, made at the Grafton Barracks after he was first taken to Corporal Thompson's room for questioning, was made after any of the officers had made any threats or had held out any inducements to the defendant, then I instruct you that the confession would not be a voluntary confession, and the contents thereof, whether they were oral or written, should be disregarded by the jury. . . . It is a question of fact solely for you to determine, whether or not inducements were made, whether or not threats were made, and whether or not this defendant actually was in fear. . . . The rule and the law governing a purported confession is this: It must appear that the confession was voluntary. If the confession was obtained by use of force, intimidation or inducements of any sort, it is not competent evidence. . . . if the situation was this, that the defendant was in fear because of the fact that he then realized that he was in a serious predicament, that does not bar the confession. The officers in charge of him are not restricted in their questioning by any state of mind that the defendant was himself solely responsible for." At the close of the charge the defendant excepted to the failure of the judge to give the five instructions requested "word for word."

Though upon a preliminary hearing on the admissibility of the purported confession the judge found that it was the voluntary act of the defendant and consequently admitted it in evidence, the question whether such confession was voluntary was to be considered and determined again by the jury on all the evidence and, if they found that it was not voluntary, they were required as matter of law to disregard it. *Commonwealth* v. *Preece,* 140 Mass. 276, 277. *Commonwealth* v. *Hudson,* 185 Mass. 402, 405. *Commonwealth* v. *Russ,* 232 Mass. 58, 69. *Commonwealth* v. *Sherman,* 234 Mass. 7, 11. The charge in this respect was correct and adequate. And it was also correct in its statement to the effect that confessions obtained by threats, promises or inducements of any sort are not voluntary. The distinction in effect between an admonition to tell the truth and an inducement to confess was pointed out clearly and correctly. Not only was the governing principle stated in general terms, but it was explained with the aid of apt illustrations. See *Commonwealth* v. *Curtis,* 97 Mass. 574, 578–579; *Commonwealth* v. *Mitchell,* 117 Mass. 431; *Commonwealth* v. *Sego,* 125 Mass. 210, 213–214; *Commonwealth* v. *Nott,* 135 Mass. 269, 272; *Commonwealth* v. *Kennedy,* 135 Mass. 543, 544–545; *Commonwealth* v. *Madeiros,* 255 Mass. 304, 308, 310. And the defendant was not entitled to have instructions given in the form presented by his requests if the requested instructions, so far as appropriate, were covered in substance by the charge. *Commonwealth* v. *Mitchell,* 248 Mass. 536, 539. *Commonwealth* v. *Powers,* ante, 59, 63–64.

The defendant contends, however, that the requested instructions were not covered in substance by the charge since the judge did not deal specifically with the alleged statements of the officers embodied in the requests. But the issue whether the confession was not voluntary because obtained by threats, promises or inducements of any sort was to be determined by the jury on all the evidence. *Commonwealth* v. *Preece,* 140 Mass. 276. And the defendant was not entitled to have the judge deal specifically with the effect of each fragment of the evidence bearing on this

issue, which might or might not be believed by the jury, considered by itself. *Commonwealth* v. *Polian*, 288 Mass. 494, 499, and cases cited. Whether specific language amounts to a threat or a promise may depend, moreover, upon the circumstances in which the language is used and on warrantable inferences drawn from the language and circumstances. *Commonwealth* v. *Morey*, 1 Gray, 461, 463. This is true even of such language as "You had better tell the truth." See *Commonwealth* v. *Sego*, 125 Mass. 210, 213–214; *Commonwealth* v. *Nott*, 135 Mass. 269, 272; *Commonwealth* v. *Kennedy*, 135 Mass. 543, 544–545; *Commonwealth* v. *Preece*, 140 Mass. 276, 277; *Commonwealth* v. *Hudson*, 185 Mass. 402, 405–406. The judge, however, by way of illustration, dealt specifically with a significant phrase in one of the alleged statements by the officers — "We'll go easy with you" — instructing the jury that if these words were used "the confession must be rejected." But without deciding the extent to which the requested instructions with respect to alleged specific statements of officers were correct as matter of law, it is sufficient to say that the clear and accurate instructions upon the governing principles fully protected the defendant, and that the failure of the judge to give more specific instructions with reference to portions of the evidence recited in the defendant's requests was not error.

We have considered all the assignments of error which are set forth in the summary of record and find in them no error. It follows that there must be

*Judgment on the verdict.*