COMMONWEALTH *vs.* MURTON MILLEN & others.

Norfolk.    November 8, 9, 26, 1934. — February 14, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Practice, Criminal*, Presence of defendant, Trial of defendants together, Change of venue, Postponement of trial, Trial without jury, Removal to Federal court, Guarding of defendant in court room, Challenge of jurors, Order of evidence, Charge to jury, Argument by district attorney, Examination as to mentality of the defendant, New trial. *Habeas Corpus cum Causa. Jurisdiction. Evidence*, Relevancy and materiality; Confession; Opinion: expert; Of insanity; Of consciousness

of guilt; Competency; Hospital record. *Sheriff. Constitutional Law,* Due process of law, Equal protection of the law, Trial by jury. *Jury and Jurors. Witness,* Expert. *Homicide.*

A defendant charged with a felony is not entitled as of right, by art. 12 of the Declaration of Rights of the Constitution of the Commonwealth or by the Fourteenth Amendment to the Constitution of the United States or otherwise, to be present at the hearing of a motion for a change of venue, or of a motion for a trial separate from that of codefendants, or of a motion for a postponement of trial, or of a motion for trial without jury.

At the hearing of motions for a change of venue and postponement of trial by the defendant in an indictment for murder alleged to have been committed in conjunction with an armed robbery of a bank in a town, the commissioner of public safety of the Commonwealth testified that, after the murder and before the hearing, he had made an address in that town with respect to proposed legislation providing for the unification of the police departments of the Commonwealth, and that he did not refer to the robbery of the bank in his address; and it was *held,* that there was no error in the exclusion of testimony by him stating the gist of what he had said in the address.

On the record, no abuse of discretion and no error appeared in the denial of a motion, by two of three defendants indicted jointly for murder, for a trial separate from that of the third defendant; there was no merit in a contention by the two defendants that they suffered prejudice through being tried jointly with the third defendant in that a confession by him implicating them was introduced at the trial, in that their defence on the ground of their insanity was adversely affected by the character of and circumstances surrounding the introduction of evidence pertaining to his mental condition, in that the trial to the jury was suspended, at his request, for two weeks pending a preliminary hearing by the trial judge with respect to the admissibility of such confession, and in that the joint trial resulted in a confusion of issues, it appearing that the judge adequately instructed the jury to the effect that the confession by the third defendant and the evidence as to his mental condition could not affect the other two defendants.

In the circumstances, there was no error in proceeding to trial, on a date about two and one half months after the crime was committed and in the county where it was committed, of an indictment for murder of a police officer committed in conjunction with an armed robbery of a bank, motions by the defendant for postponement of trial and for a change of venue being based in substance on the contention that it would be impossible to obtain an impartial jury and a fair trial because of an inflamed public and of unlawful, sensational and prejudicial publicity concerning the matter in the press and on the radio.

A waiver of trial by jury by the defendant in an indictment for murder is nugatory; the law of this Commonwealth provides for no form of trial of such an indictment other than by jury.

The defendant in an indictment for murder, even if he chooses to waive his constitutional right to trial by jury, has no constitutional right to a trial without jury.

Section 6 of G. L. (Ter. Ed.) c. 263, as amended by St. 1933, c. 246, § 1, does not violate the constitutional guaranty of equal protection of the law in that by that statute the right to trial without jury is provided, in certain instances, to persons charged with noncapital offences, whereas no such right is provided to those charged with capital offences.

It is only when State legislation can be shown to exist which violates the constitutional guaranty of the equal protection of the law and interferes with a party's right of defence that he can have his cause removed to the Federal court under § 31 of the Judicial Code, 36 U. S. Sts. at Large, 1096. Per CROSBY, J.

The mere presentation in the State court of a petition by the defendant for the removal of a criminal cause from the State court to the Federal court under said § 31 is not enough to arrest the jurisdiction of the State court over the cause if a sufficient ground for removal is not shown to that court in the petition.

Neither the mere existence of general prejudice on the part of the public against one indicted for murder in a State court, nor the circumstance, that under the laws of the State no right to trial without jury is provided to him, whereas such a right is provided, in certain instances, to persons charged with noncapital crimes, constitutes a sufficient ground for removal of the cause to the Federal court under said § 31.

A petition for a writ of habeas corpus cum causa brought in the District Court of the United States under § 32 of the Judicial Code, 36 U. S. Sts. at Large, 1097, was not a proceeding in habeas corpus within the meaning of U. S. Rev. Sts. § 766 in the form in which it appeared previous to June 19, 1934.

During the trial of an indictment, the defendant filed in the Superior Court a petition under said § 31 for removal of the cause to the District Court of the United States, which petition did not set forth any sufficient ground for such a removal, and also filed in the District Court a petition under said § 32 for a writ of habeas corpus cum causa. The second petition was denied by the District Court, and the petitioner appealed to the Circuit Court of Appeals. The trial judge in the Superior Court denied the first petition, denied a motion by the petitioner for a stay of the trial and ordered that it proceed. Upon an appeal with assignments of error following a verdict of guilty, it was *held*, that

(1) Jurisdiction over the cause not having been transferred from the Superior Court to the District Court by the mere presentation to the Superior Court of such petition for removal, and the Superior Court having refused to recognize the defendant's right of removal, the issuance of a writ of habeas corpus cum causa under said § 32 was necessary to transfer jurisdiction;

(2) Said § 766 not being applicable, the proceedings in the Superior Court did not become null and void thereunder by reason of

the mere pendency in the Federal courts of the proceedings under said § 32;

　　(3) The action by the trial judge in the Superior Court disclosed no error.

Whether, at the trial of an indictment for murder, any questions should be put to persons called as jurors in addition to the questions prescribed by G. L. (Ter. Ed.) c. 234, § 28, is a matter lying within the discretion of the trial judge.

In the examination of prospective jurors at the trial of an indictment for murder, it appeared that some jurors were investigated, at the suggestion of the defendant's counsel, by police officers using a questionnaire approved by counsel for the defendant, and that the reports of such investigation were available. The trial judge conducted the examination of the jurors and in the course thereof interrogated them with respect to such investigation. The defendant was given an opportunity to submit to the judge definite questions to be put to the jurors. There was no evidence that the jurors who were examined were not indifferent. The defendant asked leave to interrogate the jurors further than as prescribed by said § 28 on the ground that, due to "hostile public sentiment, it was humanly impossible for a very large number of those called as prospective jurors to . . . [be] impartial and unprejudiced in spite of their declarations to the contrary." The request was denied. *Held,* that no abuse of discretion nor error was shown.

On the record of the trial of an indictment for murder, there was no merit in a contention by the defendant that he was deprived of his constitutional right to be represented by counsel, and was compelled to furnish evidence against himself on the issue of his insanity, by a ruling by the trial judge that the actual exercise of the right to challenge a prospective juror must be by the defendant personally after he had conferred with his counsel about the matter.

At the trial of an indictment against several defendants for murder, there was no violation of the defendants' rights in a refusal by the trial judge to order the removal of shackles from the defendants while in the court room or in his refusal to prevent the guards from surrounding and standing close to them there.

Under G. L. (Ter. Ed.) c. 126, § 16, it is the duty of a sheriff to see to it that a prisoner in his custody, when placed on trial, is properly guarded to insure his presence at the trial, and that the safety of others is protected.

The question, whether prospective jurors at the trial of an indictment stand indifferent, is for the trial judge to determine; and on the record of the trial of an indictment for murder there was no error in a ruling by the trial judge that a certain prospective juror, who had been interviewed by a police officer, stood indifferent.

At the trial of an indictment for murder against three defendants, there was no prejudicial error with respect to two of them in the admission in evidence of a confession by the third, which implicated the two, where the trial judge instructed the jury to disregard references to the two in the confession and that no part of it should be consid-

ered as affecting their rights: it must be assumed that the jury followed such instructions; and there was no merit in a contention by the two defendants that "by reason of existing conditions and hostile public sentiment it was humanly impossible for the jury to disregard those portions of the confession which implicated" the two.

There was no error in the admission of a paper containing such confession, the third defendant having admitted signing it and that all the statements therein were true, and there being no evidence to show that the confession was obtained in an improper manner.

Upon the record of the trial of an indictment for murder, committed by shooting, against one who pleaded not guilty by reason of insanity, it was *held*, that there was no error nor abuse of discretion in

(1) The admission of testimony, given by a witness for the Commonwealth on direct examination, as to what was said in a conversation with the defendant, the witness refreshing his memory from notes which he had made at the time of the conversation;

(2) The exclusion of the opinion of the family physician of the defendant, called by him, as to his mental condition, where the trial judge, in the exercise of a sound discretion, was justified in determining that the witness was not qualified to give such an opinion;

(3) The exclusion of questions, asked of a medical expert called by the defendant, as to how many of the persons confined in institutions for the insane appreciated the difference between right and wrong and the consequences of their acts, and as to the bearing of their appreciation thereof upon the maintenance of discipline in such institutions;

(4) The admission of certain evidence to show that the defendant, while in jail, had written a message to another prisoner concerning an escape therefrom: the evidence was competent to show consciousness of guilt on the defendant's part;

(5) The admission of an opinion as to the defendant's mental condition by an expert called by the Commonwealth in rebuttal, although both the Commonwealth in its case in chief and the defendant had presented evidence to show his mental condition;

(6) The exclusion of certain purported hospital records offered by the defendant, there being no evidence offered to show that the records were authentic;

(7) The exclusion of a question, asked in cross-examination of a medical expert called by the Commonwealth, as to the findings of another physician;

(8) A refusal to strike out certain testimony by an expert in firearms, called by the Commonwealth, respecting experiments made by him and his comparisons, and his photographs relating thereto.

Section 100A of G. L. (Ter. Ed.) c. 123, pertaining to the examination of the mental condition of certain persons charged with crime, does not violate art. 12 of the Declaration of Rights of the Constitution of the Commonwealth in that it compels such a person to furnish evidence against himself, nor the Fourteenth Amendment to the Constitution of the United States in that it denies him due process of law.

Where the judge presiding at the trial of an indictment for murder in-

structed the jury that, if they found the defendant guilty, they must also announce whether he was guilty of murder in the first degree or murder in the second degree, and the defendant did not request any further instructions as to murder in the second degree, there was no merit in a contention, made by him at the argument of an appeal with assignments of error following a verdict of guilty of murder in the first degree, that the judge erred in failing to instruct the jury that it was within their province on all the evidence to render a verdict of guilty of murder in the second degree.

A portion of the closing argument of the district attorney at the trial of an indictment for murder, in which he appealed to the jury for obedience to law and their consciences and for a verdict based upon the evidence, was *held* not to be improper.

A prospective juror called for the trial of an indictment for murder stated in answer to a question put to him by the judge that he had expressed an opinion as to the guilt or innocence of the defendant based upon what he had read in the newspapers, but replied in the negative to the question asked by the judge, "Is it of such a nature that it would in your opinion conscientiously preclude you from finding . . . [him] guilty should you be convinced of . . . [his] guilt beyond a reasonable doubt on the evidence?" The judge declared the juror indifferent. *Held,* that no error was shown.

At the trial of three defendants together under an indictment for murder, there was no error in a refusal by the trial judge to permit one of the defendants to exercise more than twelve peremptory challenges; G. L. (Ter. Ed.) c. 234, § 29, upon which the judge based his refusal, does not deny to such a defendant due process of law in that it allows him only twelve peremptory challenges, while allowing thirty-six in all to the Commonwealth.

To an indictment for murder, the defendant pleaded not guilty by reason of insanity. There was evidence at the trial that, with others, he engaged in a robbery in the course of which one of the others shot and killed a person; and there was conflicting evidence on the issue of the defendant's sanity. A motion that a verdict of not guilty be ordered was denied. *Held,* that no error was shown.

No error nor abuse of discretion appeared in the denial of a motion for a new trial of an indictment for murder or in the denial of a motion to amend the motion for a new trial.

INDICTMENT, found and returned on February 28, 1934, charging Murton Millen, Irving Millen and Abraham Faber with the murder of Forbes A. McLeod on February 2, 1934, at Needham.

The indictment was tried in the Superior Court before *Brown,* J. The defendants were found guilty and filed appeals with assignments of error.

*G. S. Harvey,* for the defendants Millen.

*W. R. Scharton,* for the defendant Faber.

*E. R. Dewing,* District Attorney, *(O. V. Fortier, G. W. Arbuckle & R. G. Clark, Jr.,* Assistant District Attorneys, with him,) for the Commonwealth.

CROSBY, J.   These defendants on February 28, 1934, were indicted for the murder of Forbes A. McLeod, a police officer of the town of Needham, in the county of Norfolk in this Commonwealth, on February 2, 1934, and each of them was convicted of murder in the first degree after a trial which began on April 16, 1934, and ended on June 9, 1934.

The indictment was in two counts, which were different descriptions of the same acts.   It was the contention of the Commonwealth that the alleged murder was committed by the defendants while they were engaged in robbing the Needham Trust Company, in Needham, on February 2, 1934.

In view of the voluminous character of the record, it would not be practicable to recite all the evidence contained therein, but that most important may be summarized as follows: On February 2, 1934, at about half past nine o'clock in the forenoon, the three defendants came to the trust company in a Packard automobile operated by the defendant Murton Millen.   Each defendant was armed and one of them wore a mask.   They went into the trust company.   The defendant Faber carried a shot gun which he fired wounding one Bartholomew, who was employed by the company as a guard.   The defendant Irving Millen fired an automatic pistol while taking money from the cashier's cage.   The defendants took from the trust company about $15,000.   An employee of the trust company caused an alarm bell outside the building to ring, and Officer McLeod, who was on duty near the building and heard the alarm, hastened toward the bank.   Murton Millen, armed with a machine gun, fired through a window and shot McLeod, three bullets striking him and causing his death within a few hours.   The defendants then entered the automobile, which was operated by Murton Millen, and drove away, compelling Arnold Mackintosh, the treasurer of the bank, and John D. Riordan, the teller, to go with them, standing on

the running board. After going a short distance Riordan jumped off, and when he did so was fired upon by the defendants.

As a result of a telephone call one Salamone, a lieutenant of the fire department, was talking with Officer Haddock, and the Packard automobile operated by Murton Millen, in which the two other defendants were riding, came down the highway in front of the Needham fire station going in the direction of Boston; when in the vicinity of the fire station the machine gun was fired by Murton Millen, two of the bullets striking Haddock and killing him, and other bullets striking one Coughlin, a member of the Needham fire department, who was standing nearby. The defendants continued on for several hundred yards beyond the fire station when the automobile slowed down and Mackintosh jumped from the running board. On February 7, 1934, this Packard automobile was found in the town of Norwood. It had been partly burned and the number plates had been removed, and there was other evidence that an attempt had been made to destroy its identity. The storage battery showed that it had been recently repaired. There was evidence introduced at the trial that the defendants Millen previously had possession of this battery and that they had taken it to a certain shop to be repaired. As a result of this information the police learned that Murton Millen was living in Boston.

There was evidence as follows: After the murder of McLeod and the robbery of the Needham Trust Company, Murton Millen, accompanied by his wife, Norma Millen, went to New York City. Thereafter, on February 13, he engaged an apartment in Boston under the name of Harry Clifton. On February 16, 1934, he and his wife and Irving Millen went to New York and talked with one Messinger, and told him that the police of Massachusetts were looking for them. On February 19, 1934, Murton Millen, Irving Millen and Norma Millen went to Washington, District of Columbia, and Murton Millen, at a parcel room in a railroad station there, checked a suit case containing a machine gun, later identified as having been the gun from which

the bullets were fired that caused the death of Forbes A. McLeod. In the same parcel room a suit case had been checked containing five twenty-two calibre automatic pistols; one of these was later identified as being the pistol from which had been fired shells found in the Needham Trust Company. The defendants Murton Millen and Irving Millen lived in Washington under the name of Murt Nelson and Brudge Nelson, and under these assumed names they hired a safety deposit vault in the Hamilton National Bank in that city. On or about February 28, 1934, there was taken by the police from that vault approximately $4,730 which was identified as money stolen from the Needham Trust Company on February 2, 1934. On February 25, 1934, Murton Millen was arrested in a hotel in New York City, and in that city in an automobile registered under the name of Murt Nelson a loaded revolver was found. When being placed under arrest he struggled with the police officer and endeavored to wrest from his possession the officer's revolver. Irving Millen was arrested on the same day in the same hotel, and in his overcoat pocket at the time of his arrest a loaded thirty-two calibre automatic revolver was found. Following the arrest of these two defendants money was found on their persons which was identified as having been stolen from the Needham Trust Company on February 2, 1934. On the person of Murton Millen there was a baggage room check for the suit case in Washington in which was the machine gun hereinbefore referred to, and on the person of Irving Millen another baggage room check was found for the suit case containing the automatic pistols above referred to.

There was evidence that on February 25, 1934, the defendant Abraham Faber was interviewed by certain members of the State police; that thereafter he went with two officers to a garage, in Boston, from which were recovered guns, ammunition and dynamite; and that this garage was referred to in a letter signed by Murton Millen and addressed to Faber. This letter was introduced in evidence. There was further evidence that on March 1, 1934, one

Rose Knellar, who testified at the trial and who was engaged to be married to Faber, through her attorney telephoned to General Needham of the Massachusetts department of public safety, as a result of which he conferred with this witness and her attorney and at that time she delivered to him two packages of money, which she testified were given to her by the defendant Faber on February 10, 1934. Some of this money was identified as having been stolen from the Needham Trust Company on February 2, 1934. There was evidence of a statement made by Faber to two members of the State police, a part of which is contained in a typewritten statement signed by Faber and marked as an exhibit, which purports to be a recital by Faber of his participation in the robbery of the bank, and also with reference to his going to Norwood on February 6, 1934, when the Packard automobile used in connection with the robbery was set on fire. There was other evidence relating to the robbery and to the death of Officer McLeod which need not be further referred to.

On March 21, 1934, the defendants Murton Millen and Irving Millen each filed a special plea that he was not guilty, by reason of insanity. At the trial several experts on insanity who were called by the Commonwealth testified that in their opinion the defendants were not insane at the time the alleged crime was committed or at the time of the trial. Several other experts on insanity called by the defendants testified that in their opinion the defendants were insane at the time the alleged crime was committed and at the time of the trial. Upon the testimony of all these experts and all the other evidence a question of fact was presented for the determination of the jury. The jury returned a verdict of guilty of murder in the first degree as to each defendant.

The case is before this court on various assignments of error claimed by the defendants Millen, and other assignments of error claimed by the defendant Abraham Faber. Those claimed by the defendants Millen will first be considered. Where the word "defendants" is used it refers only to the defendants Millen.

1. The first assignment of error is that the Superior Court erred in denying the defendants' request that they be present in court at the hearing held on April 10, 1934, on their motions (1) for a separate trial, (2) for postponement of the trial date, (3) for a change of venue, and (4) for a trial without a jury. It is argued that the denial of their request constituted a denial of "due process" under the Fourteenth Amendment to the Constitution of the United States, that it violated art. 12 of the Declaration of Rights of the Constitution of this Commonwealth, which gives every subject a right "to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face . . .," and that it was error upon the broader ground that they were entitled to be present at all stages of the proceedings against them from the time of their indictment to their conviction. As the wording of the first assignment of error as set out in the summary of the record is susceptible of the construction that all the above mentioned motions were heard on April 10, 1934, it should be pointed out that such was not the case: the motions for a trial without a jury were not heard on that date, nor were the motions for a change of venue. Counsel for the defendants suggested to the judge that it would be well to consider the motions for a change of venue and the motions for a postponement of the trial date at the same time, on the ground that the evidence to be offered would affect both, but the judge proceeded to hear only the motion filed on April 3, which asked for an indefinite postponement of the trial of the defendants. Although counsel for the defendants addressed the judge on motions for a separate trial, the judge, upon learning that there was a separate motion by the defendant Faber, reserved these motions until other counsel were heard on the same question. On the next day, April 11, the following colloquy took place between the judge and counsel for the defendants: "The JUDGE: The only motion that has been before the court up to the present time has been the motion for an indefinite postponement. If I understand you correctly, you are now desiring to address yourself to the

other motions for a change of venue, to have me consider what you have said upon the other motions as applicable to that as well? Mr. HARVEY [counsel for defendants]: Precisely . . . . The JUDGE: And what is the third motion that you have in mind? Mr. HARVEY: The waiver of the right to trial by jury, and the claim of the constitutional right to appear before the court without a jury, and a motion which accompanies it . . . . The JUDGE: I think you better take up these motions that have just been presented to me, bearing the file date April 11, after we have disposed of the others. Mr. HARVEY: Yes. As I understand it . . . it may go on record that the testimony which has been presented here may be used in the three motions, which I have already indicated were just submitted? The JUDGE: Yes."

It is to be inferred in favor of the defendants that the judge allowed the evidence, which was introduced on the preceding day, when the defendants were not present, to be used in the case of the motions for a change of venue and for a trial without a jury. It is not entirely clear whether the motions for a separate trial were included in the same category, but it is assumed that they were. The separate motions for a change of venue involved and included motions for a separate trial. *Jones* v. *State,* 152 Ind. 318, 320. *Brown* v. *State,* 18 Ohio St. 496, 509. The first assignment of error is therefore considered as if the evidence introduced on April 10, 1934, was applicable to all the motions therein set forth. When on April 11, 1934, at the request of the defendants' counsel, the judge allowed the evidence which was introduced on the preceding day to be used in the case of the other motions, the defendants were present but made no inquiry as to the nature of the evidence, or any objection whatever.

The principle of law embodied in G. L. (Ter. Ed.) c. 278, § 6, that a person indicted for a felony has the right to be personally present at every step of the proceedings against him in behalf of the Commonwealth, from arraignment to sentence, *Commonwealth* v. *Costello,* 121 Mass. 371, 372, *Commonwealth* v. *McCarthy,* 163 Mass. 458, is of an-

cient origin. In the early period of criminal jurisprudence in England, the accused was denied the right to be represented by counsel. As no counsel was allowed to represent a defendant and protect him, and he could only defend himself, the courts held that he must be in court during all steps taken in his cause, however insignificant or unimportant. *State* v. *Outs*, 30 La. Ann. 1155, 1156. *State* v. *Davis*, 149 La. 620, 621, 622. *State* v. *Clark*, 32 La. Ann. 558. *Hopkins* v. *State*, 78 Tenn. 204, 205. See also *Powell* v. *Alabama*, 287 U. S. 45, 60, 61. Since that practice long ago has ceased, the rigor of the rule requiring the presence of the prisoner during the trial has abated to the extent that in capital cases the court is required to assign counsel for the prisoner and order paid to him reasonable compensation if the prisoner is otherwise unable to procure counsel. G. L. (Ter. Ed.) c. 277, §§ 47, 55. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 26. Pursuant to this statute counsel was assigned to the defendants. The decisions of this court exemplify the relaxation of the rule requiring a defendant to be present at every step of the proceedings against him. In *Commonwealth* v. *Costello*, 121 Mass. 371, it was held that the rule did not apply to a hearing on a motion for a new trial. In *Commonwealth* v. *Cody*, 165 Mass. 133, it was held that Pub. Sts. c. 214, § 10, now G. L. (Ter. Ed.) c. 278, § 6, which provided: "No person indicted for a felony shall be tried unless personally present during the trial," was simply declaratory of the common law and had no application to proceedings which may intervene between the verdict of the jury and sentence.

The precise question presented by the first assignment of error has never been decided in this Commonwealth. In other jurisdictions, both under the rule of the common law and under statutes embodying the rule, it is held with substantial uniformity that the prisoner's presence is not required upon the considering of a motion for a change of venue, generally on the ground that such proceedings are merely preliminary to and not a part of the trial. *State* v. *Elkins*, 63 Mo. 159, 163. *State* v. *Long*, 209 Mo. 366,

379, 380. *Blanton* v. *Commonwealth*, 210 Ky. 542, 545. *State* v. *Fletcher*, 36 N. M. 47–49. *Jones* v. *State*, 152 Ind. 318, 320. *Henry* v. *State*, 10 Okla. Cr. 369, 379, 380. *Bond* v. *State*, 63 Ark. 504, 507. *State* v. *Faries*, 125 S. C. 281, 283, 284. Compare *Lester* v. *State*, 91 Wis. 249, and *Ex parte Bryan*, 44 Ala. 402, in which cases a change of venue was ordered in the absence of both the defendant and his counsel. See Bishop, New Crim. Proc. (2d ed.) § 269, and cases cited in 16 C. J. 216, 815. It is likewise generally held, on the same ground, that the prisoner's presence is not required on the hearing of a motion for a continuance. *Miller* v. *State*, 29 Neb. 437, 440, 441. *State* v. *Fahey*, 35 La. Ann. 9, 12. *Henry* v. *State*, 10 Okla. Cr. 369, 379. *State* v. *Duncan*, 7 Wash. 336, 337. *State* v. *Faries*, 125 S. C. 281, 283–285. The defendants place reliance upon and cite decisions of the Supreme Court of Virginia. In one of the decisions of that court relied on by the defendants, in which the record did not show that the prisoner was present in court when the case was continued, it is stated that the rule established at an early date in England "still prevails in Virginia in all its ancient strictness." *Shelton* v. *Commonwealth*, 89 Va. 450, 453. This statement is no longer accurate. By virtue of statute of Virginia, Code of 1919, § 4894, now Code of 1930, § 4894, a motion for continuance, whether made before or after the arraignment, is deemed no part of the trial. *Seymour* v. *Commonwealth*, 133 Va. 775, 787. See also *Commonwealth* v. *Costello*, 121 Mass. 371, where this court declined to follow *Hooker* v. *Commonwealth*, 13 Grat. 763, relied on by the defendants, which affirmed the right of the defendant to be personally present at the hearing and overruling of a motion in his behalf for a new trial.

In view of the authorities above cited, and upon sound grounds, we are of opinion that the rule that a defendant charged with a felony has a right to be present at every stage of the proceedings against him does not apply to motions for a change of venue or motions for a postponement of the date of trial. The claim of error on the ground that the defendants were entitled to be present at all

stages of the proceedings against them from indictment to conviction is without merit. The defendants' motions for a change of venue involved and included motions for a separate trial, and what has been said of the former is applicable to the latter. The motions for trial without jury stand on the same footing as the other motions, at least so far as this question is concerned.

The claim of error on the ground that the denial of the request violated art. 12 of the Declaration of Rights of the Constitution of this Commonwealth, which gives "every subject . . . a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face," cannot be sustained. This constitutional provision was designed to prevent the conviction of the accused upon depositions or *ex parte* affidavits, and particularly to preserve the right of the accused to test the recollection of the witness in the exercise of the right of cross-examination, and to put beyond the possibility of abolition by legislative action the principle, already estab-lished as a part of the common law, that witnesses should confront the accused. *Commonwealth* v. *Slavski*, 245 Mass. 405, 414. In *Snyder* v. *Massachusetts*, 291 U. S. 97, 107, it is stated: "Confusion will result . . . if the privilege of presence be identified with the privilege of confrontation, which is limited to the stages of the trial when there are witnesses to be questioned." The implication from this language, particularly in view of the fact that the court had just previously adverted to the "distinction everywhere drawn between proceedings at the trial and those before and after," is that this provision is not applicable to the hearing on the preliminary motions in question. This view finds support in other jurisdictions. In *State* v. *Harris*, 34 La. Ann. 118, 121, it is stated: "The Constitutions of most of the States of the Union incorporate the old common law principle, that the accused in criminal cases shall have a right to meet the witnesses against him, face to face. Ours provides that he shall enjoy the right to be confronted with the witnesses against him. Const. 1879, Art. 8. However sacred this constitutional right may be, it

has not been construed to be so absolute in character as to require the constant presence of the defendant at each and every proceeding in his case. It has been construed as entitling him to be present at the *arraignment, trial, charge, verdict* and *sentence,* but we have been shown no precedent in this country where the accused is entitled to be present at any other proceeding." It was said in *State* v. *Faries,* 125 S. C. 281, 285, "In the light of the provision of our Constitution, prescribing that the accused shall 'enjoy the right to be confronted with the witnesses against him' — a provision which may be construed as an interpretation as well as a safeguard of the common-law right — we are clearly of the opinion that defendant's personal presence at the hearing of the motions for change of venue and for continuance was not essential." A right to be present at the hearing of the preliminary motions in question cannot be founded on the constitutional provision relied upon. The presence of the words "to produce all proofs, that may be favorable to him," which are not present in the cases above cited, can have no effect in altering the conclusion reached.

The contention that the denial of the request constituted a denial of "due process" under the Fourteenth Amendment to the Constitution of the United States cannot be sustained. It was stated in *Snyder* v. *Massachusetts,* 291 U. S. 97, at pages 107–108: "So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." It is also stated at pages 106–107: "Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow. What has been said, if not decided, is distinctly to the contrary. *Howard* v. *Kentucky,* 200 U. S. 164, 175; *Valdez* v. *United States,* 244 U. S. 432, 445. Cf. *Frank* v. *Mangum* . . . [237 U. S. 309] and particularly the dissenting opinion at p. 346. The underlying principle gains point and precision from the distinction everywhere drawn between proceedings at the trial and those before

and after. Many motions before trial are heard in the defendant's absence, and many motions after trial or in the prosecution of appeals." In the dissenting opinion in that case it was stated (pages 128–129): "Our traditions, the Bills of Rights of our federal and state constitutions, state legislation and the decisions of the courts of the nation and the states, unite in testimony that the privilege of the accused to be present throughout his trial is of the very essence of due process. The trial as respects the prisoner's right of presence in the constitutional sense, does not include the formal procedure of indictment or preliminary steps antecedent to the hearing on the merits, or stages of the litigation after the rendition of the verdict, but does comprehend the inquiry by the ordained trier of fact from beginning to end." It is plain from the foregoing that the denial of the request to be present at the hearing on these preliminary motions, all of which, except the motions for a trial without a jury, were addressed to the discretion of the judge, did not constitute a denial of due process within the meaning of the Fourteenth Amendment to the Constitution of the United States. The hearing of these motions was so remote and so collateral that it cannot be said that the presence of the defendants bore any relation reasonably substantial to their opportunity to defend against the crime charged. That the underlying motive in presenting the motions was to secure a fair and impartial trial does not affect the conclusion which we have reached.

The defendants contend that the denial of these motions resulted in a denial of "effective aid in the preparation and trial of the case" and therefore a denial of due process, citing *Powell* v. *Alabama*, 287 U. S. 45, 71. It was there held that in a capital case "where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in

the preparation and trial of the case." The contention of the defendants here is not that counsel was not assigned seasonably, but that the defendants, not being present at the hearing on the motions, did not have it in their power to give advice or suggestion to their counsel and were for that reason denied due process. The judge denied the request and saved the defendants' exception, specifically stating, "Unless the ground is that advice from them is necessary, and you desire them to be produced." The record fails to show any error of law under the first assignment of error.

2. The second assignment of error relates to the exclusion of a question asked a witness, Daniel Needham, commissioner of public safety for the Commonwealth of Massachusetts, at the hearing of the motions for postponement of trial and change of venue. He testified that he spoke in the town of Needham under the auspices of the American Legion Post, on March 23, 1934, on a bill which provided for the unification of the police departments of the Commonwealth. Counsel for the defendants asked the witness to give the gist of his remarks on that occasion. The district attorney objected unless counsel for the defendants could show that anything was said respecting the Needham bank robbery, so called. The objection was sustained. Thereafter counsel for the defendants renewed his question for the gist of what the witness had said with reference to his general topic. The question was excluded, the judge stating, "Only with reference to this matter, I think it is pertinent." Counsel had previously been permitted by the judge to ask if the witness referred to this case, and what he said. Counsel asked the witness if he, in any way, referred to the Needham bank robbery. He replied that he did not refer to it either directly or indirectly. There was no error in limiting the question as ruled by the judge.

3. The third assignment of error is that the judge erred in ruling that the trial should proceed in Norfolk County on April 16, 1934, jointly and concurrently with that of the defendant Abraham Faber named jointly with the defendants in the indictment, and in denying the defendants' motions for a separate trial, for an indefinite postponement,

and for a change of venue. It is the contention of the defendants that the joint trial was prejudicial to them by reason of a confession introduced in evidence by the Commonwealth, alleged to have been made by the defendant Faber, implicating these defendants, and by reason of evidence relating to the examination of the defendant Faber by Dr. Abraham Myerson and Dr. Miner H. A. Evans, and also by the introduction of testimony of Dr. Ray H. Shattuck and Dr. Richard Hoffman. It is further contended that the joint trial was prejudicial to the defendants as it permitted the suspension of the trial for two weeks, at the request of the defendant Faber, pending a preliminary hearing by the judge with respect to the admissibility of Faber's confession, and that the delay broke the continuity of the trial, and also permitted an explanation to be made by the judge to the jury which could reasonably have affected the verdict. It is further alleged that the joint trial resulted in a confusion of issues because of the erroneous prevailing notion and opinion of laymen in general, and the jury in particular, that it was impossible for the three defendants to be insane at the same time and at the time of the alleged crime. A further ground upon which a claim of error is based is that, by reason of the judge's denial of the defendants' motions for an indefinite postponement and his order of the trial date for April 16, 1934, it was impossible to obtain an unprejudiced and impartial jury on that date; and that the defendants were denied a fair and impartial trial, and were deprived of due process under the laws and constitutions of the Commonwealth and of the United States because of an inflamed public, and unlawful, sensational and prejudicial publicity in the press and on the radio — publications and broadcasts to the effect that the defendants were found to be sane by the experts who examined them under G. L. (Ter. Ed.) c. 123, § 100A.

The grounds of error alleged may be divided into two classifications, those relating to the denial of the motions for separate trial, and those relating to the denial of the other motions. They will be considered in this order.

This court has held that the question whether separate or

joint trials shall be granted rests in sound judicial discretion. *Commonwealth* v. *Sacco*, 255 Mass. 369, 413. *Commonwealth* v. *Gallo*, 275 Mass. 320, 323, 326. *Commonwealth* v. *Snyder*, 282 Mass. 401, 410. A finding of abuse of discretion cannot be based on the fact that a confession of the defendant Faber implicating these defendants would be introduced at the trial. The rule that it is discretionary with the judge whether defendants indicted jointly shall be tried together applies where it is known that a confession in writing made by one of the defendants implicating the others will probably be introduced at the trial. *Commonwealth* v. *Borasky*, 214 Mass. 313, 316. In the case at bar the judge correctly instructed the jury concerning such evidence as follows: "This Exhibit 99, the alleged confession of Mr. Faber, is not to be taken by you gentlemen as affecting either of the other two defendants, as I instructed you before, when the testimony of Mr. Ferrari was going in." When the testimony referred to was being given, the judge said: "The jury must understand that neither of the other two defendants, the Millens, are in any way bound by any statement that this witness may relate as having been made to him by Faber. They are not in any way concerned, nor is any inference to be drawn by you as to the Millens, because of necessity you must hear it as a part of this statement." The defendants were not prejudiced by the introduction of the confession. *Commonwealth* v. *Borasky*, 214 Mass. 313, 316. *Commonwealth* v. *Snyder*, 282 Mass. 401, 416. The rights of the defendants were carefully guarded by the instructions given, which, it is to be assumed, were followed by the jury.

The contention that the defendants were prejudiced by the joint trial in consequence of the introduction of medical testimony relating to the mental condition of the defendant Faber cannot be sustained. The rights of the defendants were guarded by the instruction to the jury that none of this inquiry, and none of the information elicited by it, could affect these defendants. It appears from the record that a colloquy between counsel for the defendant Faber and the witness Myerson resulted in applause by the spectators. The defendants contend that this applause was

expressive of public sentiment hostile to the defendants and was sufficient to influence the jury. It cannot be determined from the record whether the applause was expressive of approval of the independence of mind asserted by the witness, or expressive of approval of an implied conclusion of the witness that the facts did not warrant his appearing against the Commonwealth. It is not to be presumed that the jury were in any way influenced by it, and there is nothing in the record to show that they were in fact influenced, or likely to be influenced, in the discharge of their impartial duties by this episode.

The testimony of Dr. Miner H. A. Evans could in no way be said to affect the rights of the defendants in view of the instructions of the judge.

Dr. Ray H. Shattuck, testifying on direct examination in relation to the mental condition of the defendant Faber, examined Faber's eyes before the jury to show the presence of stiff or pin point pupils, pupils failing to respond to light, which the witness had testified was one of the signs of syphilis. On cross-examination this witness testified that he and another physician were alone with Faber that morning in the shower room at the jail and that if two drops of a two per cent solution of pilocarpine had been dropped into Faber's eyes that morning one would expect to find pin point pupils.

Dr. Hoffman, on direct examination by counsel for Faber, testified that Faber's pupils were very small and did not react to light and that there is no disease so far as he knew, known to medicine, which would produce "that type of pupil, except syphilis, with the exception of morphine." It is contended by the defendants that the testimony of these two witnesses was used by the Commonwealth as a basis for indirectly charging that the defendant Faber was given stupefying drugs, which in turn indirectly reflected upon the good faith of the defence of insanity of these defendants. As to this contention the jury were instructed that none of the inquiry relating to the mental condition of the defendant Faber, and none of the information elicited from it, could affect the defendants Millen.

It is further contended by the defendants that by the arrest of Dr. Shattuck, after he had testified, for violation of the Federal narcotic act at some time in the past, all the medical testimony of the defence was discredited. There was no evidence that this witness was arrested, nor evidence to show that information relating to his arrest appearing in the newspapers, assuming it did so appear, ever reached the jurors who were hearing the case, and who were confined and properly protected under instructions of the judge.

The contention of the defendants, that the continuity of the trial was broken to a prejudicial degree by the suspension of the trial pending the preliminary hearing by the judge on the admissibility of Faber's confession and that the jury might have become irritated by the long delay resulting in a prejudicial attitude toward the defendants, is without merit. There is no evidence to show that the defendants were in any way prejudiced by the suspension. The judge stated to the jury following the suspension: "The conclusion of the court after hearing the parties during these days has been that it [the confession] should be put before you, and you will hear it . . . ." It is argued by the defendants that from this statement the jury could reasonably have supposed that if the judge considered the confession properly admissible then the confession must be proper in all respects. This contention cannot be sustained, for the jury were properly instructed with reference to the confession.

The defendants' further contention that the joint trial was prejudicial in that it resulted in a confusion of issues because of the erroneous prevailing opinion that it was impossible for the three defendants to be insane at the same time and at the time of the alleged crime, is without merit. There is no evidence that such was the prevailing opinion, or that the jury entertained the opinion that it was impossible for the three defendants to be insane at the same time and at the time of the alleged crime.

Upon a careful consideration of the remaining grounds of error set forth under this assignment we do not find any error of law. The record shows that the defendants were

arrested February 25, 1934, and indicted on February 28, 1934. March 26, 1934, was fixed as the date for trial. On March 16, 1934, counsel for the defendants requested the judge to "set a trial date two weeks additional to March 26 which, if I remember correctly, will be April 9." On March 16, 1934, the judge vacated his previous order setting March 26, 1934, as the date of trial, and set April 16, 1934, as the date of the trial. Subsequent motions for postponement as well as motions for a change of venue were denied. The question of continuance is to be determined by the judge in the exercise of sound discretion. *Commonwealth* v. *Mercier*, 257 Mass. 353. The rule is the same on a motion for a change of venue. *Crocker* v. *Justices of the Superior Court*, 208 Mass. 162. In the case last cited it was stated (page 180): "Such a motion ought not to be granted upon mere suggestion, nor unless the reason for it is fully established. It is a jurisdiction which should be exercised with great caution and only after a solid foundation of fact has been first established. Manifestly it should be resorted to only in aid of justice, and it should not be permitted to be employed as an instrument of obstruction or as a means of delay." The principle is no less applicable in the case of motions for postponement. The prompt disposition of criminal cases is to be commended and encouraged. *Powell* v. *Alabama*, 287 U. S. 45, 59. It was said by this court in *Commonwealth* v. *Gallo*, 275 Mass. 320, at page 326: "While there can be no impairment of constitutional guaranties, defendants charged with crime have no vested rights in matters merely procedural, bearing no vital connection with a real defence, fairly presented, based upon the merits. Traditional tenderness for persons accused of crime, having its origin in governmental, social and legal conditions far different from those now prevalent, cannot stand in the way of expeditious ascertainment of the facts, provided every substantial right of defendants be sedulously safeguarded." The defendants allege that by reason of an inflamed public, and unlawful, sensational and prejudicial publicity, it was impossible to obtain in Norfolk County, on the day set for trial, a jury which was unprejudiced and unbiased. It may

be assumed that the public was concerned about the crime which some one had committed. It would be astonishing if the public were not interested in the circumstances here presented. Public apathy would hardly be expected. The crucial inquiry is whether it was impossible to obtain an impartial jury in Norfolk County on the day set for trial. This question was for the trial judge to determine. The judge without the benefit of argument undoubtedly was not unaware of a great deal that had been made a matter of public information through the press. He stated, "It has gone far beyond the legal rights which the newspapers have under the constitution, in my opinion." The judge stated that he had "no doubt that there is a feeling, perhaps, in this county in some quarters that might make it more difficult for the court upon whom the responsibility rests, of course, to secure a panel of disinterested, impartial jurors . . . ." He was nevertheless of the opinion that such a panel could be and would be secured "Even though it takes a thousand talesmen from which to secure them." It cannot be held that it was impossible to obtain an impartial jury on the date set for the trial in the county where the indictment was found. There is nothing to show an abuse of discretion in proceeding with the trial in the county where the alleged crime was committed.

Much stress is laid by the defendants' counsel on the fact that the defendants, who were arrested in New York City, were brought therefrom and lodged in the Norfolk County jail under heavy guard, were under such guard while awaiting trial and while on trial, and were shackled together while in the court room. General Needham, commissioner of public safety, testified that about fifty police officers, State and local, were present upon the arrival of the train from New York bearing the defendants, that he thought the guards were necessary for the purpose of taking care of traffic although he was not unmindful of his responsibility to see that the defendants were lodged safely in jail, and that any possibility of interference with them was of course in his mind. Counsel for the defendants comments upon the heavy guard, refers to the State police as "militia," and

contends that these precautions were necessary to protect the prisoners from mob violence and that the trial was dominated by a mob. It was the duty of the officers to provide for the safety of the defendants while being taken from the train to the jail, and nothing is shown that in any respect they failed properly to perform that duty. So far as the fact that they were shackled together during the trial is concerned, it is sufficient to say that the method of dealing with the defendants cannot be said to have been improper in view of the evidence relating to their arrest in New York. It was the duty of the sheriff to take such precautions as were reasonably necessary to insure the presence of the defendants in the court room during the trial. There is nothing in the record to warrant the conclusion that the judge should have intervened and required other and lesser precautions, and nothing to show that they did not obtain a fair trial. There was no impairment of any constitutional guaranties and every substantial right of the defendants was sedulously safeguarded.

4. The fourth assignment of error is that the Superior Court erred in declaring nugatory the waivers of jury trial filed by the defendants, and in denying their motions for a trial without a jury. There was no error. Undoubtedly the constitutional right to trial by jury is a privilege of the defendants which they may waive. *Commonwealth* v. *Rowe,* 257 Mass. 172. *Patton* v. *United States,* 281 U. S. 276. But their waiver of the constitutional right to jury trial gives them no constitutional right not to be tried by jury. *People* v. *Scornavache,* 347 Ill. 403. Upon their waiver of the right to trial by jury, they became subject to trial by any mode established by the law of the Commonwealth, provided that mode amounts to due process of law. *Walker* v. *Sauvinet,* 92 U. S. 90. *Maxwell* v. *Dow,* 176 U. S. 581. *Twining* v. *New Jersey,* 211 U. S. 78. *Jordan* v. *Massachusetts,* 225 U. S. 167. *Frank* v. *Mangum,* 237 U. S. 309. *Snyder* v. *Massachusetts,* 291 U. S. 97, 105. Our law provides for no form of trial in a capital case, whether the defendants choose to waive their constitutional right to jury trial or not, except trial by jury. G. L. (Ter. Ed.) c. 263, § 6.

St. 1933, c. 246. Obviously that ancient and valued mode of trial cannot be said to lie outside the scope of due process of law. No time need be spent, either, in demonstrating that the constitutional provision that "It is the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit" (Declaration of Rights, art. 29), was not intended to create a constitutional right not to be tried by jury, which in criminal cases at least could not coexist with the constitutional right to trial by jury created by the same instrument.

It is no sound constitutional objection to our statute, that it gives to defendants in noncapital criminal cases, with some exceptions, a right to trial without jury, while requiring capital cases to be tried by jury. The constitutional guaranty of the equal protection of the laws does not prevent reasonable classification, and differences in practice resulting from such classification. A State may provide for trial by jury, or for appeal, in some parts of its territory and not in others. *Chappell Chemical & Fertilizer Co.* v. *Sulphur Mines Co.* 172 U. S. 474. *Missouri* v. *Lewis*, 101 U. S. 22. The number of peremptory challenges may be made to depend on the size of the city in which the case is tried (*Hayes* v. *Missouri*, 120 U. S. 68), or the kind of jury. *Brown* v. *New Jersey*, 175 U. S. 172. A smaller jury for noncapital cases than for capital cases may be provided. *Maxwell* v. *Dow*, 176 U. S. 581. The statute in question makes only a reasonable classification in providing that a man's life shall not depend upon findings of fact made by one man.

5. Assignments of error numbered 5, 6, 11, 16 and 24 may be considered together.

Under these assignments of error the defendants contend that the Superior Court erred in denying their petitions for removal of the cases to the District Court of the United States for the District of Massachusetts under § 31 of the Judicial Code, Act of March 3, 1911, c. 231, 36 U. S. Sts. at Large, 1096 (U. S. Rev. Sts. § 641), and in denying the petitions or motions for a stay of trial of the indictment, and in ruling that the trial of the indictment proceed against the objection of the defendants.

The defendants contend (a) that by their waiver of jury trial the court lost jurisdiction to proceed with the case, (b) that upon the filing of their petitions for removal all proceedings in the State court automatically ceased, and (c) that, by reason of their petitions for a writ of habeas corpus cum causa, filed in the United States District Court for the District of Massachusetts, and their appeal from the denial of those petitions, further proceedings in the State court were rendered null and void under U. S. Rev. Sts. § 766, as amended by Act of March 3, 1893, c. 226, 27 U. S. Sts. at Large, 751, Act of February 13, 1925, c. 229, § 8 (c), 43 U. S. Sts. at Large, 940.

The contention respecting the defendants' waiver of a jury trial has hereinbefore been considered and requires no further comment.

The first petitions for removal were filed on April 16, 1934. The second petitions for removal were filed on April 23, 1934, and were much more elaborate than the first petitions. It was alleged in substance in each petition that the petitioner was denied his equal civil rights as a citizen of the United States (1) because the sentiment in Norfolk County, where the trial was to be had and from which the jury were to be drawn, was so prejudiced and biased as to prevent a fair and impartial trial by such jury, and (2) because although they had waived trial by jury and sought to be tried by a judge without a jury, being charged with a capital crime, they could not, under the laws of this Commonwealth, be so tried, although a person charged with a crime other than a capital crime could waive trial by jury and be tried without a jury.

Section 31 of the Judicial Code provides, in part: "When any civil suit or criminal prosecution is commenced in any State court, for any cause whatsoever, against any person who is denied or can not enforce in the judicial tribunals of the State, or in the part of the State where such suit or prosecution is pending, any right secured to him by any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction of the United States . . . such suit or prosecution may, üpon

the petition of such defendant, filed in said State court at any time before the trial or final hearing of the cause, stating the facts and verified by oath, be removed for trial into the next district court to be held in the district where it is pending.  Upon the filing of such petition all further proceedings in the State courts shall cease, and shall not be resumed except as hereinafter provided. . . . It shall be the duty of the clerk of the State court to furnish such defendant, petitioning for a removal, copies of said process against him, and of all pleadings, depositions, testimony, and other proceedings in the case.  If such copies are filed by said petitioner in the district court on the first day of its session, the cause shall proceed therein in the same manner as if it had been brought there by original process;  and if the said clerk refuses or neglects to furnish such copies, the petitioner may thereupon docket the case in the district court, and the said court shall then have jurisdiction therein, and may, upon proof of such refusal or neglect of said clerk, and upon reasonable notice to the plaintiff, require the plaintiff to file a declaration, petition, or complaint in the cause; and, in case of his default, may order a nonsuit and dismiss the case at the costs of the plaintiff, and such dismissal shall be a bar to any further suit touching the matter in controversy. . . ."

Section 32 of the Judicial Code, 36 U. S. Sts. at Large, 1097, provides: "When all the acts necessary for the removal of any suit or prosecution, as provided in the preceding section, have been performed, and the defendant petitioning for such removal is in actual custody on process issued by said State court, it shall be the duty of the clerk of said district court to issue a writ of habeas corpus cum causa, and of the marshal, by virtue of said writ, to take the body of the defendant into his custody, to be dealt with in said district court according to law and the orders of said court, or, in vacation, of any judge thereof; and the marshal shall file with or deliver to the clerk of said State court a duplicate copy of said writ."

The defendants contend that on April 23, 1934, pursuant to and in accordance with § 32 of the Judicial Code, they filed petitions for leave to file petitions for writ of habeas

corpus cum causa with the District Court of the United States for the District of Massachusetts; that after hearing, on April 25, 1934, the said District Court allowed the petitions for leave to file, but denied the petitions on the ground that that court was without jurisdiction in the premises; that an appeal from this decision was perfected; and that pending the proceedings on appeal in the Federal court the proceedings in the State court were null and void by virtue of U. S. Rev. Sts. § 766, as amended. Prior to June 19, 1934, that section provided: "Pending the proceedings or appeal in the cases mentioned in the three preceding sections, and until final judgment therein, and after final judgment of discharge, any proceeding against the person so imprisoned or confined or restrained of his liberty, in any State court, or by or under the authority of any State, for any matter so heard and determined, or in process of being heard and determined, under such writ of habeas corpus, shall be deemed null and void. . . ." A "proceeding in habeas corpus" is mentioned in Act of February 13, 1925, c. 229, § 6, 43 U. S. Sts. at Large, 940.

There was no error in denying the defendants' petitions, and in ordering the trial to proceed. It is only when State legislation can be shown to exist which violates the constitutional guaranty of the equal protection of the laws and interferes with a party's right of defence that he can have his cause removed to the Federal court under § 31 of the Judicial Code. *Virginia* v. *Rives*, 100 U. S. 313. *Gibson* v. *Mississippi*, 162 U. S. 565. *Kentucky* v. *Powers*, 201 U. S. 1. The mere presentation of a petition for the removal of a criminal cause from the State court to the Federal court is not sufficient to arrest the jurisdiction of the State court, and that court still has the right to examine into the sufficiency of the petition. A petition which does not allege facts showing such violation would not be ground for any action by the State court or by the Federal court. *Virginia* v. *Rives*, 100 U. S. 313. *Kentucky* v. *Powers*, 201 U. S. 1. No such violation of the defendants' rights is shown on the face of their petitions. The existence of a general prejudice against a person, indicted in the State court, on the part

of the people, if proved, is not ground for removing the cause to the Federal court under § 31 of the Judicial Code. *Virginia* v. *Rives,* 100 U. S. 313, 315, 332, 333. *Gibson* v. *Mississippi,* 162 U. S. 565, 585. *Kentucky* v. *Powers,* 201 U. S. 1, 26, 27, 31–33. The contention that the petitioners have been deprived of civil rights or constitutional rights because not permitted to waive a jury and be tried by a judge without a jury has hereinbefore been shown to be unfounded. The petitions failed, therefore, to show grounds for removal under the statute.

Furthermore, the formal and orderly process required by § 32 of the Judicial Code, where the State court refuses to recognize the defendant's right to remove the cause, was not complied with. The jurisdiction of the State court is transferred to the Federal court only in case the suit is a removable one and the proceedings to remove it are regular enough to be effective. That the proceedings to remove the cause are regular is not sufficient to transfer the jurisdiction from the State court to the Federal court. In both *Virginia* v. *Rives,* 100 U. S. 313, and *Kentucky* v. *Powers,* 201 U. S. 1, the proceedings for removal were regular. The writ of habeas corpus cum causa issued in both cases. Nevertheless, the question, as stated in *Virginia* v. *Rives,* page 317, was "whether the petition of the defendants set forth such facts as made a case for removal, and consequently arrested the jurisdiction of the State court and transferred it to the Federal court." In *Commonwealth* v. *Casey,* 12 Allen, 214, an indictment under the Gen. Sts. c. 87, §§ 6, 7, for keeping and maintaining a tenement used for the illegal sale and illegal keeping of intoxicating liquors, the defendant, subsequently to pleading not guilty to the indictment in the Superior Court, filed with the clerk of that court a duplicate of a writ of habeas corpus cum causa issued by the Circuit Court of the United States for the District of Massachusetts, addressed to the United States marshal for the district, or either of his deputies, under the Act of Congress of 1833, c. 57, § 3, 4 U. S. Sts. at Large, 633, which writ recited that he had presented his petition to that court and set forth that a certain prosecution (describing

the indictment) had been commenced against him in our Superior Court. This court held, upon exception taken to the denial of the defendant's motion to stay proceedings and dismiss him from custody, that, the suit not being a removable one, this court might properly disregard proceedings in the Circuit Court for removal. In that case it was said by Gray, J., speaking for the court, at pages 222–223: "The ruling of a circuit court of the United States, though entitled to respectful consideration, does not bind this court as a conclusive authority, and cannot dispense with the necessity of our forming and acting upon an independent judgment on a question affecting the jurisdiction of the courts of the Commonwealth to try and punish offenders against her own laws; and we have the satisfaction of knowing that if the conclusion to which upon careful deliberation we have been brought is erroneous, it can be revised and reversed on writ of error by the supreme court of the United States, which is as to such questions the common superior of the circuit court of the United States and of this court." See *Tennessee* v. *Davis*, 100 U. S. 257, 293; *Stone* v. *South Carolina*, 117 U. S. 430, 432. *Commonwealth* v. *Casey* involved Act of March 2, 1833, c. 57, § 3, 4 U. S. Sts. at Large, 633 (now § 33 of the Judicial Code, 36 U. S. Sts. at Large, 1097), and the proceedings under § 33 of the Judicial Code differ from those under § 31 in that in § 33 there is no requirement that the petition for removal be filed in the State court, but the case is nevertheless apposite.

It was formerly held in cases at circuit, passing upon U. S. Rev. Sts. § 643 (now § 33 of the Judicial Code), that a removal is effected by filing the proper petition in the Circuit Court, the writ of certiorari or habeas corpus cum causa being a mere notice to the State court and serving no jurisdictional purpose. *Abranches* v. *Schell*, 4 Blatchf. C. C. 256. *State* v. *Sullivan*, 50 Fed. Rep. 593. But these cases were overruled, in effect, by the Supreme Court. In *Virginia* v. *Paul*, 148 U. S. 107, it is said at pages 115–116: "The removal of the case out of the jurisdiction of the state court and into the exclusive jurisdiction of the Circuit Court of the United States takes place, without any order of the

Circuit Court, as soon as the state court, by the service upon it, or upon its clerk, of the appropriate process, whether *certiorari* or *habeas corpus cum causa*, has notice of the filing of the petition in the Circuit Court. But it is only after such formal notice has been given, that the jurisdiction is transferred from the state court to the national court. The proceedings under this section differ from those under section 641 [§ 31 of the Judicial Code], in which the petition for removal is required to be filed in the state court, and is of itself notice to that court, and therefore, 'upon the filing of such petition, all further proceedings in the state court shall cease,' and, if the petition shows a sufficient ground for removal, the case is in legal effect removed. *Virginia* v. *Rives,* 100 U. S. 313, 316. But under either section the jurisdiction of the state court is not taken away until it has notice, in one form or other, of the petition for removal; under section 641, by the petition filed in that court; under section 643, by notice from the clerk of the Circuit Court of the petition there filed." See *Pennsylvania Co.* v. *Bender,* 148 U. S. 255, 259; *State* v. *Sullivan,* 110 N. C. 513, 518–519.

The defendants concede, quoting from *Virginia* v. *Paul,* 148 U. S. 107, 116, that under either section "the jurisdiction of the state court is not taken away until it has notice," but contend that the court had notice by reason of the motion presented to it to stay proceedings and by reason of the filing of the petitions for removal in the Superior Court. In support of the proposition that the mere filing of the petition in the State court is sufficient notice, the defendants rely upon the paragraph in *Virginia* v. *Paul,* page 116, where it is stated: "The proceedings under this section differ from those under section 641, in which the petition for removal is required to be filed in the state court, and is of itself notice to that court, and therefore, 'upon the filing of such petition, all further proceedings in the state court shall cease,' and, if the petition shows a sufficient ground for removal, the case is in legal effect removed. *Virginia* v. *Rives,* 100 U. S. 313, 316." This language can be taken to mean only that the petition is notice to the

State court where the petition exhibits a sufficient ground of removal and the writ is, in fact, issued.

Where the State court recognizes the defendant's right to remove the cause, plainly no more notice than the filing of the petition is requisite. Where, however, the State court refuses to recognize the defendant's right to remove the cause, the formal process set forth in § 32 of the Judicial Code is necessary to transfer the jurisdiction from the State court to the Federal court.

There was plainly no error in the denial of the petitions for removal of the cases to the District Court of the United States for the District of Massachusetts or in the denial of the petitions or motions for a stay of trial of the indictment, or in the ruling that the trial of the indictment proceed. Jurisdiction was not transferred from the State to the Federal court. The petitions did not set forth a removable cause, and the formal and orderly process required by § 32 of the Judicial Code, where the State court refuses to recognize the defendant's right to remove the cause, was not complied with. It may be pointed out that on December 19, 1934, the Circuit Court of Appeals affirmed the decision of the District Court judge denying the petitions for writ of habeas corpus cum causa on the ground that the court was without jurisdiction in the premises.

The contention of the defendants, that since, pending the proceedings on appeal in the Federal court, they having acted pursuant to, and in accordance with, § 32 of the Judicial Code, the proceedings in the court below and in this court are null and void by virtue of U. S. Rev. Sts. § 766, as amended, is without merit. That section has no application to the present case. A petition for a writ of habeas corpus cum causa brought in the District Court of the United States under § 32 of the Judicial Code is not a proceeding in habeas corpus within the meaning of said § 766. The writ of habeas corpus cum causa provided for under § 32 is designed to render effective the jurisdiction of the Federal court which attaches if the petition sets forth a cause for removal and the proper steps for removal are taken. A petition for such a writ is not a proceeding

in habeas corpus but a part of the proceeding for removal. The writ was intended as auxiliary to the judicial jurisdiction in aid of which it issued. It is not like the ordinary writ of habeas corpus, "the great object of which is the liberation of those who may be imprisoned without sufficient cause." *Ex parte Watkins,* 3 Pet. 193, 202. It is not aimed at securing the liberty of the petitioner. It is not "a new suit brought . . . to enforce a civil right." *Ex parte Tom Tong,* 108 U. S. 556, 559. The distinction between the ordinary writ of habeas corpus and the writ of habeas corpus cum causa has frequently been observed. In the case of *Ex parte Bollman,* 4 Cranch, 75, Chief Justice Marshall classified the various writs of habeas corpus and with respect to the writ of habeas corpus cum causa said at pages 98–99: "It would not be difficult to demonstrate that the writ of *habeas corpus cum causa* cannot be the particular writ contemplated by the legislature in the section under consideration; but it will be sufficient to observe generally that the same act prescribes a different mode for bringing into the courts of the United States suits brought in a state court against a person having a right to claim the jurisdiction of the courts of the United States." The section under consideration was § 14 of c. 20 of the Act of September 24, 1789, 1 U. S. Sts. at Large, 81, which empowered the Supreme Court to issue the writ of habeas corpus. (Now U. S. Rev. Sts. § 751.) See *Ex parte Crouch,* 112 U. S. 178, 180; *Virginia* v. *Paul,* 148 U. S. 107, 123, 124; *McNally* v. *Hill,* 293 U. S. 131. See also *Ex parte Dierks,* 55 Fed. Rep. (2d) 371. That § 766 has no application to the writ of habeas corpus cum causa is apparent from *Commonwealth* v. *Casey,* 12 Allen, 214. It was there held that this court was not deprived of jurisdiction although the writ of habeas corpus cum causa issued from the Federal court. That case was decided almost a quarter of a century after the enactment of Act of August 29, 1842, 5 U. S. Sts. at Large, 539. The defendants rely on *United States* v. *Shipp,* 203 U. S. 563, *Lambert* v. *Barrett,* 159 U. S. 660, *In re Shibuya Jugiro,* 140 U. S. 291, *Marsino* v. *Hogsett,* 37 Fed. Rep. (2d) 407,

*Marsino* v. *Hogsett,* 37 Fed. Rep. (2d) 409, and *United States* v. *Brown,* 281 Fed. Rep. 657. There is nothing in these cases to lend countenance to the contention that an application for a writ of habeas corpus cum causa under § 32 of the Judicial Code is a proceeding in habeas corpus within the meaning of § 766. There was no error on the part of the trial judge in proceeding with the trial.

What has been said disposes of assignments of error numbered 21, 22, and 23 relating to the denial of motions for a mistrial and directed verdicts.

6. The seventh assignment of error relates to the denial of the defendants' motion to examine the jurors.

It is contended that the judge erred in denying the defendants' motion to interrogate further prospective jurors, other than as prescribed by G. L. (Ter. Ed.) c. 234, § 28. These motions were made upon the ground that, due to "hostile public sentiment, it was humanly impossible for a very large number of those called as prospective jurors to have been impartial and unprejudiced in spite of their declarations to the contrary."

Whether any questions should be put to persons called as jurors in addition to those prescribed by the statute, was a matter lying within the discretion of the presiding judge. *Commonwealth* v. *Phelps,* 209 Mass. 396, 414. *Commonwealth* v. *Spencer,* 212 Mass. 438, 446. *Commonwealth* v. *Sacco,* 255 Mass. 369, 418. *Commonwealth* v. *Cero,* 264 Mass. 264, 270, 271. *Commonwealth* v. *Snyder,* 282 Mass. 401, 411. There was no evidence that the jurors who were summoned to try this case and who were examined by the judge were biased and prejudiced and not indifferent jurors. That some jurors were investigated at the suggestion of the defendants' counsel by police officers did not establish something which made it proper to go beyond the usual course of procedure. The jurors were examined by the judge himself, and an opportunity was presented to the defendants to prepare definite questions to be asked of the various jurors, upon the judge's determining that he would submit such questions. This fully protected the defendants. No right of

theirs was violated by the refusal of the judge to permit the jurors to be examined further as to their prejudice or bias. *Commonwealth* v. *Cero,* 264 Mass. 264, 271.

The attention of this court has been drawn, in connection with similar assignments of error by the defendant Faber, to the case of *Gideon* v. *United States,* 52 Fed. Rep. (2d) 427 (distinguished in *Cravens* v. *United States,* 62 Fed. Rep. [2d] 261, 270), in support of the position that the questioning of some prospective jurors by police officers exerted such a baneful effect upon them as to justify further questioning in accordance with motions made. This contention seems fully answered by what was said in *Commonwealth* v. *Cero,* 264 Mass. 264, 271–276. The statements in the Federal case are inapplicable to the present facts. There was no secret preliminary examination of prospective jurors which was improper. The questionnaire used was approved by counsel for the defendants and the reports filed were available. The trial judge interrogated the jurors with respect to this questioning. Many of those who served were not even questioned by the police officers. There is nothing on this record to show that the defendants' rights were not protected in this respect, nor that the mere questioning in this manner rendered the jury partial and biased, or required that the judge should go beyond the usual rule of the statute.

7. The eighth assignment of error relates to the denial to counsel for the defendants of the right to challenge prospective juror Roy H. Cushing, in behalf of the defendant Irving Millen, and in ruling that the defendants must challenge personally all prospective jurors. The grounds upon which this claim of error is based are that the defendants had a right under art. 12 of the Declaration of Rights to act for themselves or to be represented by counsel at their election, and the ruling of the judge in requiring the defendants to challenge each juror personally and not by counsel constituted a denial to the defendants of their constitutional right to be represented by counsel in this connection, and that by requiring the defendants to challenge personally

they were thereby compelled to furnish evidence against themselves on the issue of their insanity.

There is no substantial merit in these contentions. It has been said that a defendant must exercise his challenge personally. *State* v. *Price,* 10 Rich. (S. C.) 351, citing 2 Hawk. P. C. c. 43, § 4. To require these defendants to do so deprived them of no rights to be represented by counsel. The accused were permitted to confer with their counsel in exercising their challenges and at all times their rights in this particular were adequately protected. At no time during the trial were the defendants denied the assistance of counsel. The trial judge ruled merely that the actual exercise of the challenges must be by the defendants personally. It interfered with no rights of the defendants to be heard by counsel within art. 12 of the Declaration of Rights. Furthermore, by requiring the defendants to challenge personally, they were not thereby compelled to furnish evidence against themselves on the issue of their insanity. Their present mental capacity for trial had already been passed upon. G. L. (Ter. Ed.) c. 123, § 100A. *Commonwealth* v. *Devereaux,* 257 Mass. 391, 396. *Commonwealth* v. *Vallarelli,* 273 Mass. 240, 249. *Commonwealth* v. *Soaris,* 275 Mass. 291, 297. To compel the defendants personally to challenge jurors at ·a trial for which they were found by preliminary examination to be competent and presumed to be competent, added nothing by way of evidence to the ultimate issue of their responsibility for the crime committed. The jury were fully and adequately instructed on this issue on the evidence presented.

8. The ninth assignment of error is that the trial judge erred in refusing to exercise his jurisdiction over the defendants in the court room, in refusing to order the removal of the shackles, obvious to the jury, and to prevent the guards from standing so close to and surrounding the defendants, both of which matters were in full view of the jury, and were to the prejudice of the defendants in that the impression was conveyed to the jury that the defendants were dangerous and desperate criminals, guilty of the alleged

crime, and that such was in violation of their rights to due process under the Fourteenth Amendment to the Constitution of the United States; and further, that the judge abrogated his authority and control over the defendants in the court room to the sheriff. G. L. (Ter. Ed.) c. 126, § 16, provides that "The sheriff shall have custody and control of the jails in his county . . . and of all prisoners committed thereto, and shall keep the same himself or by his deputy as jailer, master or keeper, and shall be responsible for them." It was also the duty of the sheriff to see that the defendants when placed on trial were properly guarded to insure their presence there, and that the safety of others was protected. If, as could have been found, the sheriff had knowledge that it was advisable and necessary during the trial to have shackles upon them, he violated no legal duty owed to them.

9. The tenth assignment of error is that the judge erroneously ruled that prospective juror Richard H. Sager stood indifferent. He testified that he had been interviewed by a Quincy police officer. There is no evidence tending to show that this juror was influenced by the interview had by him with the officer, or that this juror was not properly qualified. The question whether he stood indifferent was for the judge to decide. *Commonwealth* v. *Cero*, 264 Mass. 264, 270. *Commonwealth* v. *Snyder*, 282 Mass. 401, 411.

10. The seventeenth assignment of error is that the trial judge erred in overruling the objection of the defendants to the admission of the so called confession of the defendant Faber through Joseph L. Ferrari, a witness called by the Commonwealth. The ground on which this claim of error is based is that "By reason of existing conditions and hostile public sentiment it was humanly impossible for the jury to disregard those portions of the confession which implicated these defendants in spite of the court's instructions to do so," and that "Its admission was, therefore, highly prejudicial to these defendants . . . and was an abuse of judicial discretion." The judge instructed the jury that they were to disregard references therein made to the defendants Millen, and that no part of it should be considered as affecting

their rights. These instructions were correct: they were to the effect that the confession was to be considered only as admissions affecting the defendant making them. *Commonwealth* v. *Storti,* 177 Mass. 339. *Commonwealth* v. *Teregno,* 234 Mass. 56, 58. It is to be assumed that the instructions were followed by the jury.

11. The eighteenth assignment of error is that the judge erred in overruling the objection of the defendants to the admission in evidence of Exhibit 99, the confession of Faber. Faber stated in the court room during the trial that all the statements contained in it were truthful. He admitted signing it. There was no evidence presented tending to show that it was obtained by threats, duress, or in any improper manner. It was properly admitted. *Commonwealth* v. *Belenski,* 276 Mass. 35, 41.

12. Assignment of error numbered 20 related to the testimony of John F. Stokes, a witness called by the Commonwealth, who was asked in direct examination as to what was said at a conversation with the defendants. He was allowed to testify to this conversation. He refreshed his memory from notes which he had made at the time. The admission of the testimony fails to show any error. *Commonwealth* v. *Trefethen,* 157 Mass. 180, 187, 188.

13. Assignment of error numbered 25 is that the judge erred in excluding the following question asked Dr. Oscar Hurovitz, the family physician of the defendant Irving Millen, and the answer thereto, "You think he [the defendant Irving Millen] was a mental defective if not a moron? A. Yes, sir." The witness testified that he had attended the family for two years prior to the time of the trial, and had examined this defendant only once; that he had been in practice for eight years and did not claim to be a psychiatrist, but instead was engaged in the general practice of medicine. It is sufficient to say that it was for the judge to determine in the exercise of a sound discretion whether the witness was qualified to testify respecting the mental condition of this defendant. No error appears in the exclusion of the question and answer.

14. Assignment of error numbered 26 is based upon the

exclusion of the following questions asked of Dr. Max Bennett, a medical expert called by the defendants: "From your experience can you tell what percentage of insane people confined in insane institutions know the difference between right and wrong?" "From your experience what percentage of insane persons confined in insane institutions appreciate the consequences of their acts?" "Is not that appreciation by most of the inmates of the consequences of their acts a factor in maintaining discipline in insane institutions?" ' Although these questions were excluded, the judge allowed the defendants to ask whether or not persons who were insane were capable of planning either alone or with others with cunningness or shrewdness any acts or plans which they desire to consummate. We are of opinion that there was no error in the exclusion of the questions above referred to. Answers to those questions would not in our opinion assist the jury in determining the mental condition of the defendants. It appears from the record that the trial judge allowed a considerable latitude to the defendants in the examination of experts in mental diseases called by them. The exception to the exclusion of the questions referred to in this assignment of error must be overruled.

15. Assignments of error numbered 27, 28, 29, 30 and 31 may be considered together. They relate to the alleged error of the judge in overruling the objections of the defendants to the admission in evidence of a magazine (Exhibit 123) which was taken from Irving Millen, and eight burnt matches (Exhibit 124) that were found in Murton Millen's cell; and of the testimony of the witnesses Theodore E. Fitzgerald, John T. Brown and Thomas H. Mitchell in reference to these exhibits. According to their testimony there were on page 5 of the magazine some figures made with burnt matches which, when decoded by Fitzgerald and Mitchell, read: "Abl thinking way to make break. Can U get saw somehow? Need cash for L." The witness Brown was asked: "And some time around half past seven in the evening do you recall a conversation, or anything that Murton Millen said, that attracted your at-

tention?" and he answered: "Murt asked to have some magazines exchanged with Faber, and bring back any magazines that he might have to give him. Patrolman Fitzgerald went over and took the magazines and went down to Faber's cell. Faber was lying down at the time, and he went by his cell and continued on to Irving's, and laid the magazines on the window sill. . . . We picked up the Cosmopolitan Magazine, and on page 5 there was a series of numbers along the edge, written in a burnt match." The exhibits and the evidence were properly admitted. They were competent for the consideration of the jury upon the question whether Murton Millen was the author of the code message which the Commonwealth contended was on a certain page of the magazine in question and which, in the opinion of the witness Brown, was written with burnt matches. They were also competent as tending to show a consciousness of guilt. *Commonwealth* v. *Madeiros,* 255 Mass. 304, 314. No error is shown in the overruling of these objections.

16. Assignment of error numbered 32 is that the judge erred in overruling the objection of the defendants to the admission of the testimony of Dr. L. Vernon Briggs, a witness called by the Commonwealth in rebuttal as a mental expert who had examined the defendants under G. L. (Ter. Ed.) c. 123, § 100A, relating to their mental condition. The ground upon which this claim of error is based is that the burden was on the Commonwealth to prove beyond a reasonable doubt that these defendants were sane; that ordinarily the presumption of sanity carries this burden until the defendants put in evidence to the contrary which makes rebuttal proper; and that before this witness testified evidence had been submitted to the jury by the Commonwealth in its case in chief as to the conduct of these defendants and as to statements which they had made. When the Commonwealth rested its case it had submitted evidence upon which it was a question for the jury to decide whether or not the defendants were guilty of the crime charged so far as their sanity was concerned. Thereafter evidence was submitted by the defendants tend-

ing to show that at the time the alleged crime was committed the defendants were insane. Dr. Briggs then was called by the Commonwealth to rebut certain medical testimony presented by the defendants. This witness at no time testified concerning any statements or information given to him at the time of his examination of the defendants respecting the crime charged in the indictment. His testimony related entirely to his opinion as to the mental condition of the defendants on the date when the alleged crime was committed. It is the contention of the defendants that "Where, as in this case, there was evidence of insanity, although it was not opinion evidence but merely evidence concerning the talk and declarations of the defendant which was some evidence on the question of sanity or insanity, in the government's case in chief, evidence tending to control or rebut that presumption should have been presented by the government in chief. Therefore, it was incompetent in rebuttal." We are of opinion that the testimony of this witness who was called in rebuttal and had examined the defendants under G. L. (Ter. Ed.) c. 123, § 100A, was competent. The circumstance that the defendants had filed a plea of not guilty by reason of insanity before the beginning of the trial did not render the testimony of the witness incompetent. The contention that the defendants were "as a result of the examination of Dr. L. Vernon Briggs, compelled to give evidence against themselves contrary to the provisions of art. 12 of the Declaration of Rights of the Constitution of the Commonwealth is without merit.

17. Assignment of error numbered 33 relates to alleged error of the judge in excluding exhibits marked 129, 130, 131, 132 and 133 for identification. These exhibits appear to be hospital records which the defendants contend were admissible under G. L. (Ter. Ed.) c. 233, § 79. There is no evidence offered to show that they were authentic. In the absence of such evidence they were rightly excluded.

18. Assignment of error numbered 34 is that the judge was in error in excluding the following question asked in cross-examination of Dr. L. Vernon Briggs, a medical ex-

pert called by the Commonwealth: "And Dr. Myerson found he [Murton Millen] was a constitutional psychopath?" No error appears in the exclusion of this question. In substance it was an inquiry as to the findings of another physician.

19. Assignment of error numbered 35 is that the judge erred in admitting the testimony of Dr. Earl Kendall Holt concerning the mental condition of the defendants. The ground upon which this claim of error is based is the same as that for assignment of error numbered 32. The witness testified that in the presence of Dr. Briggs and Dr. Myerson he examined the defendants. He testified as an expert concerning their mental condition. No error appears in the admission of the testimony of this witness.

20. The thirty-sixth assignment of error is that the judge erred in denying motions of the defendants to strike out certain testimony of Charles J. Van Amburgh, a ballistic expert called by the Commonwealth, respecting experiments made by him and his comparisons, and his photographs relating thereto. The ground upon which this claim of error is based is that the experiments tended to confuse and mislead rather than to assist the jury. The evidence of the witness, an expert in firearms, cannot be said to have been improperly admitted; its admission was within the discretion of the judge. The testimony and the exhibits fail to show any error of law. See *Commonwealth v. Snyder*, 282 Mass. 401, 419.

21. Assignment of error numbered 37 is based upon the denial of motions of the defendants for directed verdicts of not guilty by reason of insanity. It is manifest that there was no error in denying these motions.

22. Assignment of error numbered 38 is that the judge erred in failing to charge or instruct the jury that it was within their province on all the evidence to return a verdict of murder in the second degree. The record shows that the judge did not decline to instruct the jury with reference to murder in the second degree. The instructions upon that subject were as follows: "The verdict in a murder case as to degrees is that the degree must be announced by degree,

as, for instance, you will announce 'Guilty,' and when inquiry is made of the foreman, 'Guilty of what, Mr. Foreman?' and the foreman replies, 'Guilty of murder in the second degree,' or 'Guilty of murder in the first degree,' on the second inquiry. That is the form in which you will express your verdict one way or the other when you return." The record fails to show that any request was made by counsel for the defendants that the jury should be further instructed as to murder in the second degree. It need not be decided whether the evidence most favorable to the defendants would warrant a verdict of guilty of murder in the second degree.

23. Assignment of error numbered 39 is that the judge erred in overruling the objection of the defendants to the last part of the district attorney's closing argument, which was an appeal to the jury for obedience to law and their consciences, and to return a verdict based upon the evidence. We are of opinion that the argument did not exceed what was legitimate and proper. *Commonwealth* v. *Mercier*, 257 Mass. 353, 377. The exception to it must be overruled.

Assignments of error numbered 12, 13, 14, 15 and 19 need not be considered as they are not argued by the defendants and are waived.

We now proceed to a consideration of the assignments of error of the defendant Faber.

Assignment of error numbered 1 relates to the denial of the defendant's motion for a change of venue. Assignment of error numbered 2 relates to the denial of the defendant's motion for a separate trial. Assignment of error numbered 3 relates to the denial of the defendant's request to be present in court at the hearing of the various motions filed by him. Assignment of error numbered 4 relates to the ruling of the judge that the defendant's written waiver of a jury trial was nugatory and the ruling that the defendant proceed to trial before a jury. Assignment of error numbered 5 relates to the denial of the defendant's motion to interrogate further prospective jurors. Assignment of error numbered 6 relates to the ruling of the judge that the defendants must personally challenge each prospective juror.

Assignment of error numbered 8 relates to the decision of the judge declaring juror Joseph E. Robertson indifferent; the contention is that said juror had been interviewed by a police officer and that the officer represented the district attorney's office and therefore said juror was not indifferent. The same contention is made with reference to juror Richard H. Sager under assignment of error numbered 9. Assignment of error numbered 28 relates to the admission in evidence of the testimony of Dr. Briggs and Dr. Holt, two physicians designated to make an examination as to the mental condition of the defendant under the provisions of G. L. (Ter. Ed.) c. 123, § 100A; it is the contention of the defendant under this assignment of error that that statute compels a person and this defendant to furnish evidence against himself in violation of art. 12 of the Declaration of Rights of the Constitution of Massachusetts, and in violation of the Fourteenth Amendment to the Constitution of the United States in that it deprives the defendant of his life and liberty without due process of law. Assignment of error numbered 30 relates to the denial of the defendant's motion for a mistrial on the ground that there appeared in the newspapers an account of the arrest of Dr. Ray H. Shattuck for violation of the narcotic laws. Assignment of error numbered 31 relates to the argument to the jury by the district attorney. Assignment of error numbered 32 relates to the charge to the jury; it is contended under this assignment of error that the judge erred in declining to instruct the jury that it was within their province to return a verdict of murder in the second degree against the defendant. These enumerated assignments of error have been amply covered by what has been said with reference to similar assignments of error in the cases of the defendants Irving and Murton Millen and no occasion exists to deal with them further.

Assignments of error numbered 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27 and 29 have not been argued. All the exceptions on which these assignments of error are based have been considered and no reversible error is found. *Commonwealth* v. *Snyder*, 282 Mass. 401, 421.

There remains to consider assignments of error numbered 7, 11, 24 and 33. The defendant contends, under assignment of error numbered 7, that the judge erred in declaring that juror Harrison W. Mills was indifferent. The ground alleged is that said juror stated in an answer to a question put to him by the judge that he had expressed an opinion as to the guilt or innocence of the defendant based upon what he had read in the newspapers. This juror replied in the negative to the question asked by the judge, "Is it of such a nature that it would in your opinion conscientiously preclude you from finding them guilty should you be convinced of their guilt beyond a reasonable doubt on the evidence?" In view of the answer given, the judge properly declared the juror to stand indifferent. *Commonwealth v. Snyder*, 282 Mass. 401, 411.

Under assignment of error numbered 11, it is contended that the judge erred in declining to permit the defendant to exercise more than the twelve peremptory challenges exercised by him. The number of peremptory challenges to which a defendant is entitled in a capital case is defined by G. L. (Ter. Ed.) c. 234, § 29, which provides that "Upon the trial of an indictment for a crime punishable by death or imprisonment for life, each defendant shall be entitled to twelve peremptory challenges of the jurors called to try the case . . . ." The ground on which this contention is based is that "The statute limiting this defendant to only twelve peremptory challenges, in a capital case in which three defendants are charged with the commission of the same offence, and which gives the prosecution thirty-six challenges, is unconstitutional, and that the refusal of the court to permit the defendant an equal number of challenges as that accorded the prosecution deprives the defendant of due process of law." The constitutional guaranty of due process does not guarantee to a citizen of a State any particular method of procedure or form of tribunal in civil or criminal cases. A State may provide such procedure as it may determine if it has jurisdiction and provides for due notice of the charge and adequate opportunity to be heard in defence of it. *Maxwell v. Dow*, 176 U. S. 581. *Twining*

v. *New Jersey,* 211 U. S. 78, 111. *Jordan* v. *Massachusetts,* 225 U. S. 167, 176. *Missouri* v. *North,* 271 U. S. 40, 42. *Snyder* v. *Massachusetts,* 291 U. S. 97. In the case last cited it was said by Mr. Justice Cardozo, speaking for the court, at page 105: "The Commonwealth of Massachusetts is free to regulate the procedure of its courts in accordance with its own conception of policy and fairness unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. . . . Its procedure does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar." It seems plain that no error is shown under this assignment of error. *Commonwealth* v. *Dorsey,* 103 Mass. 412. *Hayes* v. *Missouri,* 120 U. S. 68. *Brown* v. *New Jersey,* 175 U. S. 172.

Under assignment of error numbered 24, it is contended that the judge erred in denying the defendant's motion for a directed verdict at the close of the case of the Commonwealth. There was evidence that this defendant participated with the other defendants in the robbery of the Needham Trust Company and that while so engaged the defendant Murton Millen shot and killed Forbes A. McLeod, a police officer. The defendant Faber's plea is not guilty by reason of insanity. There was evidence introduced by this defendant tending to sustain that plea; there was other evidence submitted by the Commonwealth which, if credited by the jury, warranted a finding that the defendant was sane. Upon this conflicting evidence a verdict in favor of the defendant could not properly have been directed. The denial of the defendant's motion fails to show any error. *Commonwealth* v. *Belenski,* 276 Mass. 35, 49.

Under assignment of error numbered 33, it is contended that the judge erred in denying the defendant's motion for a new trial on the grounds that the verdict was against the evidence, the weight of the evidence, and the law. No error of law appears in the denial of the defendant's motion for a new trial, or in the denial of his motion to amend the original motion. The motions were addressed to the sound

discretion of the trial judge, and there is nothing to indicate that such discretion was not properly exercised. His determination of facts on the motions is final.

The trial covered a period of several weeks, and was conducted by the presiding judge with fairness, and in accord with correct rules of law. As no constitutional right of the defendants was violated, and as no error of law appears in the conduct of the trial, the entry must be

*Judgments on the verdicts.*